1521

E. Nelson CULLEN, Respondent-Appellant v. Patsy Darlene PRESCOTT, formerly Cullen, Appellant-Respondent.

(394 S.E. (2d) 722)

Court of Appeals

*Harry C. Wilson, Jr.,* of *Lee, Wilson, Erter & Calloway,* Sumter, *for appellant-respondent.*

*Thomas M. Bultman,* of *Bryan, Bahnmuller, King, Goldman & McElveen,* Sumter, *for respondent-appellant.*

Heard May 16, 1990.

Decided July 2, 1990.

CURETON, Judge:

In this child custody suit the mother refused to return the child to the father after visitation. The father petitioned to compel immediate return of the child. The mother then petitioned for primary custody of the child. After making certain jurisdictional determinations, the trial court ordered the mother to return the child. Both parties appeal. We affirm in part, and reverse and remand in part.

The parties obtained a Georgia divorce in 1985. The decree gave them joint custody of their daughter, Tonya, who was eight years old at the time of the hearing in this case.

The father now lives in Greensboro, North Carolina, and Tonya lives with him during the school year. The mother lives in Sumter, South Carolina. The divorce decree grants the mother custody during the summer vacation, on certain holidays, and on alternate weekends.

While the mother had Tonya for spring break in 1989 she observed some bruises or welts across her legs. She notified the Department of Social Services (D.S.S.) and it investigated. At the end of the vacation period, the mother refused to return Tonya to the father. As a consequence, the father brought an action in South Carolina to enforce the custody provisions of the Georgia decree. The mother then petitioned the family court for a change of custody alleging both physical and sexual abuse by the father. The family court consolidated the petitions and heard them on an emergency basis.

At the hearing, the mother and a D.S.S. social worker testified the daughter told them the father spanked and/or beat her for losing a pair of earrings. They also stated the daughter spoke of other beatings. The social worker recommended that Tonya not be returned to her father.

Karen McLeod, a psychotherapist, talked to Tonya briefly on the day of the hearing.[1] The daughter told McLeod of the

[1] McLeod also talked to the child in 1986 when the mother then accused the father of physical and sexual abuse. These charges were apparently determined to be unfounded. We are concerned, as apparently was the family court judge, by the recurrence of the filing of abuse charges by the mother against the father.

beatings and indicated she was afraid of her father. McLeod opined it would be in the best interest of Tonya not to be returned to the father's custody. She also found credible the child's allegations of fear and explosiveness.

After McLeod gave her opinion, the court questioned her about Tonya's fear of her father and Tonya's other feelings for her father. Following this exchange, the trial court announced it would interview Tonya in the presence of McLeod. After the interview, the court stated that McLeod was "under the impression that there is no threat of danger or harm." In disposing of the parties' motions for reconsideration, the court qualified this statement by concluding that while McLeod had not changed her position that the best interests of the child would be served by the child remaining with the mother, she did indicate after the *in camera* conference "much less concern about the safety of the minor child. . . ."

The mother complains the questioning of McLeod by the judge shows a lack of neutrality on his part. She claims the judge's questions were designed to influence McLeod to change her recommendation. She also objects to the court's *in camera* examination as inappropriate.

The family court enforced the custody provisions of the Georgia decree by ordering the mother to return the daughter to the father. The court strictly enjoined the father from using corporal punishment for discipline. The court also ordered a home study of both homes and directed the parties to comply with the joint custody provisions of the Georgia decree.

As pertains to the question of jurisdiction, the court found it had emergency jurisdiction only and did not have jurisdiction to entertain the mother's petition for a permanent change of custody. In that regard, the court said:

> [J]urisdiction for the father or mother to modify the previous Agreement and Order of the Court would vest in the state of the adverse party. Specifically, in that regard I find and conclude that if the father seeks to modify custody in any fashion, that his action must be filed in the state and county where the mother resides. Likewise, I find that if the mother is to seek a modification of cus-

tody, that she must file an action in the state and county where the father resides.

The court awarded the mother $350.00 in attorney fees finding the mother's actions in refusing to return Tonya to the father in North Carolina where reasonable under the circumstances to protect the welfare and safety of her daughter.

The mother argues the court committed reversible error both in questioning McLeod and conducting an *in camera* interview with her and the child. We find no error. The record contains no contemporaneous objection to either the questioning or the *in camera* interview. Thus, we may not address this objection on appeal. *See Grant v. Grant*, 288 S.C. 86, 340 S.E. (2d) 791 (Ct. App. 1986). Additionally, we have reviewed the record and find no abuse of discretion in either the questioning of McLeod by the judge or the *in camera* interview.

Both parties appeal the court's ruling that the party seeking custody in the future must bring suit in the state where the opposing party resides. We agree this ruling is erroneous. Under the Uniform Child Custody Jurisdiction Act, a state may exercise jurisdiction to make a child custody determination if it is the home state of the child at the time of commencement of the proceedings. *S.C. Code Ann.* Section 20-7-788(a)(1) (1976). In like manner, a state may exercise jurisdiction if certain prerequisites are met without regard to the residence of the child or the parties. Section 20-7-788(a)(2), (3), and (4).

We hold the court erred in concluding it did not have jurisdiction to modify the Georgia custody decree. Section 20-7-788(a)(2) provides courts in this state may assume jurisdiction of a custody dispute upon a finding that it is in the best interest of the child to do so. The statute requires the child and a parent have "significant connection" with this state and there is available in the state "substantial evidence concerning the child's present or future care, protection, training and personal relationships."

Jurisdiction founded upon the "significant connection" provisions of the Act should not be exercised hastily and the Act must be interpreted in the spirit of its legislative purpose which includes discouraging unilateral re-

moval or retention of children from their usual homes and preventing relitigation that shifts children from state to state. *Mattleman v. Bandler*, 123 N.H. 368, 461 A. (2d) 561 (1983); *see also Knoth v. Knoth*, 297 S.C. 460, 377 S.E. (2d) 340 (1989).

We have found only a few South Carolina cases that discuss the tests of Section 20-7-788. *Knoth v. Knoth, supra; Mansour v. Mansour*, 296 S.C. 215, 371 S.E. (2d) 537 (1988); *McGee v. McGee*, 287 S.C. 644, 340 S.E. (2d) 571 (Ct. App. 1986); *Sinclair v. Albrecht*, 287 S.C. 20, 336 S.E. (2d) 485 (Ct. App. 1985). Moreover, it appears the cases proceed to decide the jurisdictional issue based upon the continuing jurisdiction provision of Section 20-7-810 or the inconvenient forum provision of Section 20-7-796.

The purpose of the UCCJA is to ensure custody litigation takes place in the state with the closest connections to the child and his parent(s) and where evidence concerning care, protection, training, and personal relationship is most readily available. *Mansour*, 296 S.C. 215, 371 S.E. (2d) 537. Courts will exercise jurisdiction based upon these criteria if there are sufficient contacts with the child and his parent(s) to justify legitimate state interest in the outcome of the dispute, and if sufficient evidence is available to enable the court to make a fair determination of custody based upon the best interest of the child. *William L. v. Michele P.*, 99 Misc. (2d) 346, 416 N.Y.S. (2d) 477 (1979). The UCCJA does not call for a balancing of the child's contacts with competing states with jurisdiction going to the state with the greater volume of evidence or contacts. *Meier v. Davignon*, 105 N.M. 567, 734 P. (2d) 807 (1987). In *Reeve v. Reeve*, 391 So. (2d) 789 (Fla. Dist. Ct. App. 1980), the court concluded Florida could assume jurisdiction over a custody dispute even though the bulk of evidence regarding the child's present care, protection, training, and personal relationships existed in New Jersey. The court found there was also substantial evidence in Florida concerning such issues. Still "substantial evidence" was never intended to be used as a substitute for "some evidence" but is intended to require a high degree of connection and access to evidence. *In re Marriage of Miche*, 131 Ill. App. (3d) 1029, 87 Ill. Dec. 72, 476 N.E. (2d) 774 (1985).

The trial court did not discuss the availability of evidence in

South Carolina vis-a-vis North Carolina, but apparently labored under the misapprehension that the mother could not prosecute her suit in this state because the father was a resident of North Carolina. We find this to be error and further hold the family court met the UCCJA prerequisites to exercise jurisdiction. Both Tonya and her mother had significant connection with South Carolina. The mother was a resident of this state and had joint custody of Tonya. Additionally, because of the D.S.S. investigation and the fact the professionals who had seen the child are in South Carolina, we think substantial evidence existed in this state. We also think that because no other state has sought to exercise jurisdiction in this dispute, the best interest of Tonya would be served by the courts of this state exercising jurisdiction.[2] We, therefore, hold the family court erred in not exercising jurisdiction under the facts of this case.[3] We therefore reverse and remand to the family court for a ruling on the mother's custody petition based upon present circumstances.

Because we have remanded the custody issue for redetermination, other custody issues in the case are moot.

The only remaining question is whether the family court erred in requiring the father to pay attorney fees of $350.00. The award of attorney fees is within the sound discretion of the court. Because the court found the mother was justified in bringing the abuse allegations to the attention of the court and because of this court's remand of the custody issue, we find no abuse of discretion in the award of a minimal attorney fee.

Affirmed in part, reversed and remanded in part.

SANDERS, C.J., and GARDNER, J., concur.

---

[2] A primary purpose of the UCCJA is to avoid conflicting decrees of two states in custody matters. *Kirylik v. Kirylik*, 292 S.C. 475, 357 S.E. (2d) 449 (1987).

[3] If upon remand the husband commences suit in his state of residence, the family court should then determine which state is the most convenient forum to decide the custody issue.