649 S.E.2d 72

**Elenita R. DUCKETT, Appellant,**

v.

**Ronald R. GOFORTH and Frank Raymond Greenhough, Defendants,**

**of whom Ronald R. GOFORTH is Respondent.**

No. 4246.

Court of Appeals of South Carolina.

Submitted May 1, 2007.

Decided May 15, 2007.

Rehearing Denied Aug. 27, 2007.

448

450

Matthew P. Turner and J. Michael Turner, Sr., both of Laurens, for Appellant.

Ronald R. Goforth of Fayetteville, AR, Pro Se Respondent.

ANDERSON, J.

Elenita R. Duckett ("Duckett") initiated an action in Greenwood County Family Court to determine paternity and adjudicate custody and child support in regard to Ronald R. Goforth ("Goforth"). The family court found it lacked jurisdiction to address Duckett's petition and dismissed the action. We reverse and remand.[1]

## FACTUAL/PROCEDURAL BACKGROUND

The minor child "H.J." was allegedly conceived as the result of a relationship between Duckett and Goforth while they were in the Philippines. Duckett was married to Frank Raymond Greenhough (Greenhough) who, according to Duckett, was in Australia at the time of H.J.'s conception. In June 1994, Duckett learned she was pregnant and informed Goforth. Because she was frightened of having a child on her own, Duckett asked Greenhough for his assistance and they reconciled. Both agreed that Greenhough would serve as H.J.'s father. On February 1, 1995, Duckett gave birth in the Philippines. In 1997, Duckett and Greenhough moved from the Philippines to Australia.[2]

On February 1, 2000, Duckett filed an application for dissolution of the marriage and designated H.J. as a child of the marriage, but on March 30, 2000, Duckett submitted an affidavit in which she averred that Goforth was H.J.'s biological father.

On March 27, 2000, the Australian family court issued a Decree Nisi of Dissolution of Marriage between Duckett and Greenhough. The decree incorporated previously issued orders awarding Duckett custody, assigning joint financial responsibility for H.J., and providing Greenhough with visitation

---

1. We decide this case without oral argument pursuant to Rule 215, SCACR.

2. At some point, Duckett became an Australian citizen.

rights. The tribunal declared it was satisfied that H.J. was the only child of the marriage and proper arrangements for her welfare had been made. In addition, a restraining order remained in place to prevent either party from removing H.J. from the Western State of Australia without written consent.

On June 4, 2001, Duckett and H.J. left Australia without the Australian court's permission and traveled to the United States, where they have remained for the last five years. Duckett settled in Greenwood County and remarried.

On December 14, 2001, Duckett petitioned the Washington County Family Court in the State of Arkansas, where Goforth resided, to determine paternity and award child support. Duckett named Goforth as the father but did not name Greenhough as a party or notify him of the proceedings. Goforth moved to dismiss, alleging Arkansas was not H.J.'s home state and the Arkansas court lacked jurisdiction. Ultimately, the Arkansas Supreme Court ruled the Washington County Court did not have jurisdiction to hear the petition because Arkansas was not the home state of the child.

On August 27, 2002, Greenhough filed an application in accordance with the Hague Convention for H.J.'s return to Australia. Two days later, Greenhough filed an application, pursuant to the Hague Convention, for the enforcement of the Australian visitation order. On March 4, 2004, Greenhough filed an application in Australia seeking the return of H.J. The application was dismissed following a hearing on January 24, 2005.

Duckett instituted this action in the Greenwood County Family Court requesting a finding of paternity, child support and other related relief. Goforth moved to dismiss, arguing the family court lacked subject matter jurisdiction by virtue of the prior rulings of the Australian and Arkansas courts and the on-going litigation in Australia. Additionally, he alleged the family court lacked personal jurisdiction. He pled *res judicata* as a defense. The family court issued the following order:

24. This Court finds that it does lack subject matter jurisdiction. It is clear that the child was born during the marriage of the Plaintiff [Duckett] and husband [Greenhough]. There is a presumption that the husband is the

father. It is noted that the divorce decree of the Plaintiff and husband made findings in relation to visitation, support and custody of the child between the husband and Plaintiff, and that neither party appealed that ruling.

25. Further, that the Plaintiff's subsequent conduct of applying to the Australian Court for both the divorce and permission to remove the child from Australia reinforces to this Court the continuing effect of that Australian Court's order and jurisdiction.

24.[3] The Court also finds that since there is a presumption that a child born during the marriage is a product of the husband and wife, Plaintiff must first establish that the husband is not the father of the child before she can bring an action to declare another person (Goforth) as the father. This Court has been provided no proof that this child born of the marriage is not the child of the father. Without such evidence, this Court lacks personal jurisdiction over the Defendant pursuant to SCRCP 12(b)(2).

25. Next, Goforth argues that this matter should be dismissed as this Court must acknowledge and recognize the Australian decrees.... Since there has been an adjudication of these matters and recent pending litigation in the Australian Courts, this Court declines to exercise jurisdiction in this instance.

26. Finally, Goforth argues that this matter has been litigated and appealed to the highest Court of the State of Arkansas. Additionally, the issue of paternity has been litigated in Australia, and that court has ruled that this is a child of the marriage. These orders have never been contested or appealed and are final. Specific rulings and findings have been issued, and this Court must give full faith and credit to those orders and findings. This Court agrees.

Duckett filed a Rule 59(e), SCRCP, motion for reconsideration, which the family court denied.

## ISSUES

I. Did the family court err in concluding it lacked subject matter jurisdiction when South Carolina is the home state of the minor child?

---

3. Numbering error is exactly as it appears in the record.

II. Did the family court err in concluding it did not have personal jurisdiction over Goforth?

III. Did the family court err in concluding it was without jurisdiction because of a prior Australian decree?

## STANDARD OF REVIEW

█ In appeals from the family court, this court may find facts in accordance with its own view of the preponderance of the evidence. *Nasser–Moghaddassi v. Moghaddassi,* 364 S.C. 182, 189, 612 S.E.2d 707, 711 (Ct.App.2005) (citing *Emery v. Smith,* 361 S.C. 207, 213, 603 S.E.2d 598, 601 (Ct.App.2004)). However, this broad scope of review does not require this court to disregard the family court's findings. *Lacke v. Lacke,* 362 S.C. 302, 307, 608 S.E.2d 147, 149 (Ct.App.2005) (citing *Bowers v. Bowers,* 349 S.C. 85, 561 S.E.2d 610 (Ct.App.2002)); *Badeaux v. Davis,* 337 S.C. 195, 202, 522 S.E.2d 835, 838 (Ct.App.1999). Nor must we ignore the fact that the family court judge, who saw and heard the witnesses, was in a better position to evaluate their credibility and assign comparative weight to their testimony. *Scott v. Scott,* 354 S.C. 118, 124, 579 S.E.2d 620, 623 (2003) (citing *Woodall v. Woodall,* 322 S.C. 7, 10, 471 S.E.2d 154, 157 (1996)). However, our broad scope of review does not relieve the appellant of the burden of convincing this court the family court committed error. *Nasser–Moghaddassi,* 364 S.C. at 190, 612 S.E.2d at 711 (citing *Skinner v. King, 272 S.C. 520, 522–23, 252 S.E.2d 891, 892 (1979)* ).

## LAW/ANALYSIS

### I. Uniform Child Custody Jurisdiction Act (UCCJA)

### A. Subject Matter Jurisdiction

Duckett contends South Carolina is the home state of the child and the family court erred in finding it lacked subject matter jurisdiction. We agree. Additionally, Duckett maintains the family court erred in concluding this matter should be dismissed because the court must recognize the Australian decree in accordance with section 20–7–830 of the South Carolina Code (1985). We agree.

■ "The jurisdiction of a court over the subject matter of a proceeding is determined by the Constitution, the laws of the state, and is fundamental." *Badeaux v. Davis,* 337 S.C. 195, 205, 522 S.E.2d 835, 840 (Ct.App.1999). Because Duckett's amended complaint included a request for custody, the jurisdictional question requires analysis under the Uniform Child Custody Jurisdiction Act (UCCJA).[4]

The UCCJA was enacted to:

(1) avoid jurisdictional competition and conflict with courts in other states in matters of child custody . . .; (2) promote cooperation with the courts of other states to the end that a custody decree is rendered *in that state which can best decide the case in the interest of the child;* (3) assure that litigation concerning the custody of a child take place ordinarily in the state with which the child and his family have the closest connection and where significant evidence concerning his care, protection, training and personal relationships is most readily available. . . .

S.C.Code Ann. § 20–7–784 (1985) (emphasis added).

Under the UCCJA, a state has jurisdiction to make an initial or change in custody determination if

(1) this State (i) is the home state of the child at the time of commencement of the proceeding, or (ii) had been the child's home state within six months before commencement of the proceeding and the child is absent from this State because of his removal or retention by a person claiming his custody or for other reasons, and a parent or person acting as parent continues to live in this State; or

(2) it is in the best interest of the child that a court of this State assume jurisdiction because (i) the child and his parents, or the child and at least one contestant, have a significant connection with this State and (ii) there is available in this State substantial evidence concerning the child's present or future care, protection, training and personal relationships; or

---

4. The UCCJA was adopted in South Carolina in 1981 and codified in the South Carolina Code of Laws sections 20–7–782 through 830 (1985). *See Sinclair v. Albrecht,* 287 S.C. 20, 21, 336 S.E.2d 485, 486 (Ct.App.1985).

(3) the child is physically present in this State and (i) the child has been abandoned or (ii) it is necessary in an emergency to protect the child because he has been subjected to or threatened with mistreatment or abuse or is otherwise neglected or dependent; or

(4) (i) it appears that no other state would have jurisdiction under prerequisites substantially in accordance with paragraphs (1), (2) or (3) of subsection (a), or another state has declined to exercise jurisdiction on the ground that this State is the more appropriate forum to determine the custody of the child and (ii) it is in the best interest of the child that this court assume jurisdiction.

S.C.Code Ann. § 20–7–788(a)(1985); *Charest v. Charest,* 329 S.C. 511, 518, 495 S.E.2d 784, 787 (Ct.App.1997); *see also* § 20–7–788(b) (suggesting that when another state has declined jurisdiction, physical presence in this state of the child, or of the child and one of the contestants, may be sufficient to confer jurisdiction on a court of this state to make a child custody determination).

■ South Carolina is unquestionably the home state of this child. "Home state" means the state where the child lived with a parent for at least six consecutive months immediately preceding the time of the action. S.C.Code Ann. § 20–7–786(5) (1985); *Charest,* 329 S.C. at 518, 495 S.E.2d at 788. H.J. has resided with her mother in Greenwood County since June 2001, well over the six consecutive months preceding commencement of this action. Indeed, by the time of this appeal, H.J. will have lived nearly half of her life in South Carolina. *Williams v. Williams,* 285 S.C. 270, 272, 329 S.E.2d 751, 751 (1985) (holding where mother and child had lived in South Carolina for seven years prior to the action, South Carolina was the home state and the more convenient forum under UCCJA).

Additionally, H.J. has attended the same school in Greenwood County since entering the first grade. All records pertaining to her schooling are in Greenwood County. H.J.'s medical care has been provided in Greenwood County since she was six years old. Substantial evidence concerning H.J.'s present or future care, protection, training, and personal relationships is available only in South Carolina. Moreover,

the Arkansas Supreme Court declined to exercise jurisdiction over the matter, acknowledging that Arkansas was not H.J.'s home state.

Goforth considers Australia the "decree state." A South Carolina court may not modify a decree from another state unless: "(1) it appears to the court of this State that the court which rendered the decree does not now have jurisdiction under jurisdictional prerequisites substantially in accordance with this subarticle or has declined to assume jurisdiction to modify the decree and (2) the court of this State has jurisdiction." S.C.Code Ann. § 20–7–810(a) (1985). The UCCJA defines "state" as "any state, territory or possession of the United States, the Commonwealth of Puerto Rico and the District of Columbia." S.C.Code Ann. § 20–7–786(10) (1985).

Concomitantly, Goforth suggests that section 20–7–830 requires South Carolina courts to recognize the continuing jurisdiction of the Australian tribunal. This section applies UCCJA provisions relating to the recognition and enforcement of decrees issued by other states "to custody decrees and decrees involving legal institutions similar in nature to custody, rendered by appropriate authorities of other nations if reasonable notice and opportunity to be heard were given to all affected persons." S.C.Code Ann § 20–7–830 (1985).[5]

The parties dispute whether a foreign country is the same as another state under the UCCJA. We need not reach that determination. Even if Australia were recognized as the "decree state," it no longer retains jurisdiction under jurisdictional prerequisites substantially in accordance with the UCCJA. § 20–7–810(a)(1), *supra.*

 Although more than one state may meet the jurisdictional requirements under the UCCJA, once a custody decree has been entered, the continuing jurisdiction of the decree

---

**5.** In order to invoke section 20–7–830, all parties affected by the Australian proceeding must have been afforded reasonable notice and opportunity to be heard on the issue of paternity, assuming, as Goforth claims, that paternity was actually litigated. As the putative biological father Goforth was an affected party. Yet, nothing in the record indicates he received any notification of the proceeding. Therefore, Goforth's reliance on section 20–7–830 to have the Australian decree recognized and enforced by the South Carolina family court is misplaced.

state is exclusive. *Charest v. Charest,* 329 S.C. 511, 518, 495 S.E.2d 784, 788 (Ct.App.1997) (citing *Sinclair v. Albrecht,* 287 S.C. 20, 336 S.E.2d 485 (Ct.App.1985)). Jurisdiction continues if one parent resides in the decree state and substantial evidence remains there, even though another state has become the child's home state. *Id.* A court may exercise continuing jurisdiction when "there are sufficient contacts with the child and his parent(s) to justify legitimate state interest in the outcome of the dispute, and if sufficient evidence is available to enable the court to make a fair determination of custody based upon the best interest of the child." *Widdicombe v. Tucker–Cales,* 366 S.C. 75, 87, 620 S.E.2d 333, 340 (Ct.App. 2005) (quoting *Cullen v. Prescott,* 302 S.C. 201, 206, 394 S.E.2d 722, 725 (Ct.App.1990)).

On the other hand, if connection with the decree state ends because all parties involved have moved away or *contact with the decree state has become slight,* another state may assume jurisdiction to modify the decree. *Knoth v. Knoth,* 297 S.C. 460, 463, 377 S.E.2d 340, 342 (1989) (explaining that jurisdiction of the decree state is exclusive and continues unless the state no longer meets the jurisdictional requirements or declines to exercise jurisdiction) (emphasis added). The South Carolina family court may obtain jurisdiction if it is in *the best interest of the child* because (1) the child and his parents, or the child and at least one contestant, have a significant connection with the state and (2) *substantial evidence is available in the state concerning the child's present or future care,* protection, training, and personal relationships. S.C.Code Ann. § 20–7–788(a)(2) (1985) (emphasis added).

"Courts will exercise jurisdiction based upon these criteria if there are sufficient contacts with the child and his parent(s) to justify legitimate state interest in the outcome of the dispute, and if sufficient evidence is available to enable the court to make a fair determination of custody based upon the best interest of the child." *Cullen v. Prescott,* 302 S.C. 201, 206, 394 S.E.2d 722, 725 (Ct.App.1990).

In *Cullen,* 302 S.C. at 205, 394 S.E.2d at 724, we reversed the family court's conclusion that it did not have jurisdiction to modify a Georgia custody decree. We found section 20–7–788(a)(2) provides South Carolina courts may assume jurisdic-

tion of a custody dispute upon a finding that it is in the best interest of the child to do so, if the child and a parent have significant connection with this state and substantial evidence is available in the state concerning the child's present or future care, protection, training and personal relationships. *Cullen,* 302 S.C. at 205, 394 S.E.2d at 724.

Our reasoning in *Cullen* applies to the circumstances in the case *sub judice.* H.J. has not lived in Australia since 2001 but has lived in South Carolina with her mother nearly half of her life. Evidence concerning her present and future welfare is available only in South Carolina. Moreover, contact with Australia has become so slight that it no longer meets jurisdictional requirements under section 20–7–788(a). Because the Australian tribunal no longer has jurisdiction over the matter, South Carolina has jurisdiction and can modify the prior custody decree as the home state. It is in H.J.'s best interest that the question of paternity be resolved. To ensure that custody litigation takes place where H.J. has the closest connection, the South Carolina family court should adjudicate the issues in this case.

Furthermore, South Carolina has a legitimate interest in the outcome of this dispute where it affects welfare and protection of its young citizenry. The legislature has granted the family court broad and comprehensive authority in providing for children in this State. 21 S.C. Jur. *Children and Families,* § 153. To that end, the family court has exclusive jurisdiction to hear and determine proceedings to compel the support of a child; to include in the requirements of an order for support the providing of necessary shelter, food, clothing, care, medical attention, expenses of confinement, both before and after the birth, the expense of educating his or her child and other proper and reasonable expenses; to require persons able to provide support to pay a fair and reasonable sum on a periodic basis; to make orders for support until the child is eighteen years of age or is emancipated or where there are physical or mental disabilities; to determine the manner in which child support is paid, that is, directly or through the court; to require a person ordered to support another to give security; to hold those persons who violate court orders with regard to child support in contempt and to sentence them appropriately; to modify or vacate any order; and to make

any order necessary to carry out and enforce the provisions of the Code, all without the intervention of a jury. *Id.* (citing S.C.Code Ann. § 20–7–420 (Supp.2006)).

"The only limitation upon the court's power to provide for the maintenance of children, including security therefor, is that such provision shall be just and equitable, considered in the light of the circumstances of the parties, the nature of the case, and the best interests of the children." *Id.* (citing *Fender v. Fender,* 256 S.C. 399, 408, 182 S.E.2d 755, 759 (1971)).

### B.Venue

Duckett asserts that South Carolina is the proper venue to determine the issues in this case. We agree.

█ "Even if South Carolina has jurisdiction to consider a custody issue, the Family Court in its discretion may decline to exercise jurisdiction if it finds that it is an inconvenient forum to make a custody determination under the circumstances and another State is a more appropriate forum." *Charest v. Charest,* 329 S.C. 511, 519, 495 S.E.2d 784, 788 (Ct.App.1997).

In determining whether it is an inconvenient forum, the UCCJA provides a court should consider whether it is in the child's interest that another state assume jurisdiction by evaluating the following factors, among others: (1) If another state is or recently was the child's home state; (2) If another state has a closer connection with the child and his family or with the child and one or more of the contestants; (3) If substantial evidence concerning the child's present or future care, protection, training and personal relationships are more readily available in another state; (4) if the parties have agreed on another forum which is no less appropriate;(5) If the exercise of jurisdiction by a court of this State would contravene any of the purposes state in § 20–7–784.

*Id.* (citing S.C.Code Ann. § 20–7–796(c) (1985)).

█ As H.J.'s home state for nearly one-half of her life, South Carolina has the most significant connections with her present and future welfare. No other State or country has a closer connection to H.J. and her mother. Substantial evi-

dence of H.J.'s care, protection, training and personal relationships are NOT more readily available in another state. Accordingly, under these circumstances we rule South Carolina is not an inconvenient forum in which to adjudicate the issues in this action.

### C. Personal Jurisdiction

Duckett argues the trial court erred in determining the family court did not have personal jurisdiction over Goforth. We agree.

The UCCJA establishes that personal jurisdiction of an out of state resident may be obtained if the following requirements are satisfied:

(a) Notice required for the exercise of *jurisdiction over a person* outside this State shall be given in a manner reasonably calculated to give actual notice, and may be:

(1) by personal delivery outside this State in the manner prescribed for service of process within this State;

(2) in the manner prescribed by the law of the place in which the service is made for service of process in that place in an action in any of its courts of general jurisdiction;

(3) by any form of mail addressed to the person to be served and requesting a receipt;

(4) as directed by the court, including publication, if other means of notification are ineffective.

(b) Notice under this section shall be served, mailed or delivered, or last published, at least twenty days before any hearing in this State. Provided, however, that in proceedings pursuant to § 20–7–788(a)(3) above, upon a showing by the moving party that an emergency or abandonment situation exists within the meaning of § 20–7–788(a)(3) so as to place the child in jeopardy, the court may shorten the notice period to such period as it may deem to be in the best interests of the child.

(c) Proof of service outside this State may be made by affidavit of the individual who made the service, or in the manner prescribed by the law of this State, the order pursuant to which the service is made, or the law of the place in which the service is made. If service is made by

mail, proof may be a receipt signed by the addressee or other evidence of delivery to the addressee.

(d) Notice is not required if a person submits to the jurisdiction of the court.

S.C.Code Ann. § 20–7–792 (1985).

▆▆ Service on Goforth was properly effected at least twenty days prior to the April 11, 2005 hearing on his motion. Importantly, Goforth appeared for the purpose of contesting jurisdiction in his motion to dismiss, indicating he had actual notice of the proceedings. Duckett satisfied the service of process requirements under the applicable law of this State to give the family court personal jurisdiction over Goforth. Accordingly, we hold the family court erred in finding it lacked personal jurisdiction.

The family court, nonetheless, determined it lacked personal jurisdiction over Goforth because no evidence existed to rebut the presumption that Greenhough was H.J.'s father.

▆▆▆ "The presumption of legitimacy, although rebuttable, is one of the strongest known to law." *Hudson v. Blanton,* 282 S.C. 70, 75, 316 S.E.2d 432, 434 (Ct.App.1984) citing *Barr's Next of Kin v. Cherokee, Inc.,* 220 S.C. 447, 68 S.E.2d 440 (1951). "Every child born in wedlock is presumed to be legitimate." *Id.* (citing *Tarleton v. Thompson,* 125 S.C. 182, 118 S.E. 421 (1923)). The presumption of a husband's access to his wife "must be overcome by the clearest evidence that it was impossible for him, by reason of impotency or imbecility, or entire absence from the place where the wife was during the period of conception," to have fathered the child. *Id.* at 75, 316 S.E.2d at 435 (citations omitted).

▆▆ It strains the imagination to conceive of a more persuasive record rebutting the presumption of paternity. Admittedly, Greenhough signed H.J.'s birth certificate at Duckett's request and agreed to be H.J.'s father because Duckett feared raising a child on her own. However, Greenhough's January 12, 2000 affidavit indicated he and Duckett understood Greenhough was not H.J.'s biological father. Greenhough claimed he was infertile and he never acknowledged paternity. .Shortly after filing her 2001 petition for divorce in Australia, Duckett named Goforth the putative

biological father. Her affidavit of April 11, 2005 alleged Greenhough was unable to father a child and was not H.J.'s biological father. Additionally, Duckett explained she believed Goforth was the biological father because they were sexually involved when H.J. was conceived, and she was not having a sexual relationship with her husband at the time of conception. Significantly, Greenhough was physically located in Australia when H.J. was conceived in the Phillipines.

The testimony of a husband and wife as to "any relevant matter" is admissible on the issue of paternity, including testimony regarding parentage and marriage. Roy T. Stuckey, *Marital Litigation in South Carolina* 359 (3d ed.2001) citing S.C.Code Ann. § 20–7–956(A)(8) (1976). Although irrelevant to the determination that the family court had personal jurisdiction over Goforth, we conclude Duckett's evidence sufficiently rebutted the presumption of Greenhough's paternity.

## II. *Res judicata*

Duckett claims the family court erred in finding custody, child support, and paternity had been litigated in Australia and in affording full faith and credit to the Australian tribunal's ruling. We agree.

Though not specifically referring to the doctrine of *res judicata* in its order, it appears the family court intended to rule that either *res judicata* or collateral estoppel barred litigation of the issues in the present action.

*Res judicata* precludes parties from subsequently relitigating issues actually litigated and those that might have been litigated in a prior action. *S.C. Dep't of Soc. Servs. v. Basnight,* 346 S.C. 241, 249, 551 S.E.2d 274, 278 (Ct.App.2001) (citation omitted). The doctrine flows from the principle that public interest requires an end to litigation and no one should be sued twice for the same cause of action. *Town of Sullivan's Island v. Felger,* 318 S.C. 340, 344, 457 S.E.2d 626, 628 (Ct.App.1995). "*Res judicata* is the branch of the law that defines the effect a valid judgment may have on subsequent litigation between the same parties and their privies. *Res judicata* ends litigation, promotes judicial economy and avoids the harassment of relitigation of the same issues." *Nelson v.*

*QHG of S. C., Inc.*, 354 S.C. 290, 304, 580 S.E.2d 171, 178 (Ct.App.2003) (quoting James F. Flanagan, *South Carolina Civil Procedure* 642 (2d ed.1996)) *rev'd in part on other grounds*, 362 S.C. 421, 608 S.E.2d 855 (2005). A party seeking to preclude litigation on the grounds of *res judicata* must show: (1) identity of the parties; (2) identity of the subject matter; and (3) adjudication of the issue on the merits in the former suit by a court of competent jurisdiction. *Plum Creek Dev. Co. v. City of Conway,* 334 S.C. 30, 34, 512 S.E.2d 106, 109 (1999).

▆▆▆ *Res judicata* does not bar the present litigation. The parties to the Australian litigation were Duckett and Greenhough; Goforth and Duckett are parties in the present litigation. The subject of the Australian proceeding was adjudication of custody, child support, visitation, and other related issues between Duckett and Greenhough. The action here is for determination of paternity, an award of custody, and child support between Duckett and Goforth. The issues of custody and child support have never been litigated between Duckett and Goforth. Moreover, the issue of paternity was not fully and finally adjudicated by the Australian tribunal.[6]

▆▆▆ "Collateral estoppel prevents a party from relitigating in a subsequent suit an issue actually and necessarily litigated and determined in a prior action." *Stone v. Roadway Express,* 367 S.C. 575, 580, 627 S.E.2d 695, 698 (2006).

A party may assert nonmutual collateral estoppel to prevent relitigation of a previously litigated issue unless the party sought to be precluded did not have a fair and full opportunity to litigate the issue in the first proceeding, or unless other circumstances justify providing the party an opportunity to relitigate the issue.

*Wade v. Berkeley County,* 330 S.C. 311, 317, 498 S.E.2d 684, 688 (Ct.App.1998). However, collateral estoppel is an affirmative defense which must be pled and because Goforth never raised the defense, he may not invoke the defense on appeal. *Jordan v. Jordan,* 284 S.C. 342, 346, 326 S.E.2d 416, 418

---

6. The Arkansas Supreme Court determined it lacked subject matter jurisdiction and dismissed Duckett's action, thus never reaching the merits. Accordingly, res judicata based on the Arkansas litigation does not bar the present action.

(Ct.App.1985) (holding defensive collateral estoppel is an affirmative defense and thus, must be plead).

■ Notwithstanding this procedural roadblock, collateral estoppel would not preclude Duckett from asserting a paternity claim against Goforth. Paternity was not "actually and necessarily litigated and determined" in the prior Australian proceeding. The family court erred in concluding the Australian decree constituted a determination of paternity.

■ Paternity is defined as "the state or condition of a father; the relationship of a father." *Black's Law Dictionary* 1126 (6th ed.1990). Determining parentage is inextricably linked to this State's strong interest in the protection of its children and provision for their welfare. Sections 20–7–952 through 958 of the South Carolina Code (Supp.2006) encapsulate the legislature's policies in this regard:

An action to establish the paternity of an individual may be brought by:

(1) A child;

(2) The natural mother of a child;

(3) Any person in whose care a child has been placed;

(4) An authorized agency, including, but not limited to, the Department of Social Services, pursuant to the provisions of Chapter 5 of Title 43, and any other person or agency pursuant to the provisions of §§ 20–7–435 and 20–7–840; or

(5) A person who claims to be the father of a child.

S.C.Code Ann. § 20–7–952(C) (Supp.2006).

As soon as practicable after an action has been commenced, the court, upon its motion or that of an interested party, may order the natural mother, the putative father, and the child to submit to genetic tests such as red blood cell antigen testing, human leukocyte antigen (HLA) testing, electrophoresis, or other tests which have been developed for the purpose of proving or disproving parentage and which are reasonably accessible....

For all child support cases not administered under Title IV–D of the Social Security Act, the child and all parties in a contested paternity case, upon the request of any party to the action, must be ordered by the court to submit to the

genetic testing, as provided for in subsection (A), to determine paternity.

S.C.Code Ann. § 20–7–954(A), (C) (Supp.2006).

Upon a finding that the putative father is the natural father of the child, the court must issue an order designating the putative father as the natural father. The order also shall set forth the social security numbers, or the alien identification numbers assigned to resident aliens who do not have social security numbers, of both parents. The order shall establish a duty of support and provide for child support payments in amounts and at a frequency to be determined by the court. The order also shall provide for other relief which has been properly prayed for in the pleadings and which is considered reasonable and just by the court. Upon a finding that the putative father is not the father of the child, the court shall issue an order which sets forth this finding.

S.C.Code Ann. § 20–7–957 (Supp.2006).

█ The Australian tribunal found that H.J. was a "child of the marriage" in the context of issuing the divorce decree. As Duckett points out in her brief on appeal " 'child of the marriage' for the purposes of use in a[n Australian] Decree Nisi for dissolution of marriage is defined as child (including an ex-nuptial child of either the husband or the wife, a child adopted by either of them or a child who is not a child of either of them) is a child of the marriage, if the child was treated by the husband and wife as a child of their family at the relevant time.' " Appellant's Brief on Appeal (citing Australian Family Law Act § 55A(3) Part VI (1975)). Notably, a "child of the marriage" in Australia may include children who are not the biological progeny of either spouse.

█ In South Carolina, a paternity determination for the purposes of child support relates to the natural or biological relationship between father and child. *See* S.C.Code Ann §§ 20–7–952 through 958 (Supp.2006). While a child born during a marriage is the presumed legitimate child of the husband, that presumption may be rebutted by a paternity determination. *Douglass ex rel. Louthian v. Boyce*, 344 S.C. 5, 8, 542 S.E.2d 715, 716–17 (2001) (interpreting S.C.Code Ann. § 20–7–952(E) (1985)). Treating a child as a child of the

family during the marriage does not rise to the level of a paternity determination in South Carolina. Accordingly, it is incumbent on the family court to address the question of Goforth's paternity in order to assure H.J. is supported in a manner consistent with South Carolina's legislative mandate.

## CONCLUSION

We hold that South Carolina is unquestionably the home state of the minor child and the proper venue for adjudication of the issues presented herein. The Australian tribunal no longer satisfies jurisdictional requirements under the UCCJA to retain jurisdiction over matters involving H.J.'s interests. We rule personal jurisdiction over Goforth was properly obtained according to the applicable provisions of the UCCJA. Neither *res judicata* nor collateral estoppel bars this action. The prior Australian proceeding involved different parties and the issue of paternity was never fully and finally litigated.

Accordingly, the order of the family court dismissing this action is

**REVERSED and REMANDED.**

HUFF and BEATTY, JJ., concur.