750 S.E.2d 615

**DELTA APPAREL, INCORPORATED, Respondent,**

v.

**Daniel G. FARINA, Appellant.**

**Appellate Case No. 2012–205467.**

**No. 5180.**

Court of Appeals of South Carolina.

Heard Sept. 12, 2013.

Decided Oct. 30, 2013.

258

260

Candy M. Kern–Fuller and Nicole Lynne Thornton, of Upstate Law Group, LLC, of Easley, for Appellant.

Samuel W. Outten and Catherine Runion Atwood, of Womble Carlyle Sandridge & Rice, LLP, of Greenville, for Respondent.

LOCKEMY, J.

Daniel G. Farina appeals the trial court's denial of his Rule 60(b), SCRCP motion for relief from judgment. He argues the trial court did not have personal jurisdiction to award a judgment against him and that he was not served with proper notice of the initial claim of Delta Apparel, Incorporated (Delta). We reverse.

## FACTS

Farina was hired by Delta, a corporation with corporate offices in Greenville, South Carolina, as the general manager of its Ceiba Textiles plant (Ceiba) in Villanueva, Honduras. In April of 2007, the State of California Franchise Tax Board (California Tax Board) requested that Delta begin withholding certain amounts from Farina's pay. In July of 2008, Delta terminated Farina's employment and entered into a severance settlement agreement with him. As part of the severance settlement, Farina accepted $41,022.92 as full severance payment corresponding to days of labor from October 16, 2007, up to July 10, 2008. On August 15, 2008, pursuant to the California Tax Board's mandate, Delta withheld 25%, which equaled $9,673.63, from Farina's severance payment.

In October of 2008, Farina filed a suit in Honduras against Ceiba claiming he was an employee of Ceiba, he was wrongfully terminated, and he was owed $57,984.14 in unpaid severance. On September 1, 2009, the Honduran court ruled in Farina's favor, ordering Ceiba to pay Farina $230,039.78.[1] Delta, on behalf of Ceiba, appealed the judgment to the Honduran court of appeals, which affirmed the judgment and awarded punitive damages. Delta appealed the appellate decision to the Supreme Court of Honduras, which affirmed in favor of Farina with the exception of the punitive damages award. Delta then paid the Honduran judgment to Farina.

---

1. Farina was awarded $57,984.14 in unpaid severance salaries prior to his termination, and then he was awarded $172,055.64 in damages and losses for unpaid salaries for a total of thirteen months and twenty days as a result of his wrongful termination.

On May 4, 2010, Delta filed a motion for a restraining order in South Carolina to enjoin Farina from disposing of the funds from the Honduran judgment. A hearing was scheduled in July of 2010 in which the trial court denied Delta's motion. Farina was not present at the hearing; however, he had contacted an attorney about the matter. The attorney was never retained, but he did have two conversations about the case with Delta's counsel. Also on May 4, 2010, Delta filed a summons and complaint claiming Farina fraudulently misrepresented his employment to the Honduran court. Further, Delta alleged Farina breached the employment agreement entered into by the parties. The time within which responsive pleadings could be filed expired without an answer from Farina, and, as a result, Delta filed a motion for default judgment on July 5, 2010. It also filed an affidavit of default on July 22, 2010.

Farina filed a motion to dismiss the case on July 26, 2011, and he attached an affidavit in support of his motion. The day after receiving Farina's motion to dismiss, Delta sent Farina notice of its motion for default judgment with a hearing scheduled for September 1, 2011. Delta explained that because it received notice of Farina's motion to dismiss, it sent the notice of the default judgment hearing to Farina's last known address in California as well as to the Arizona address provided on his recent correspondence.

Farina did not appear at the default judgment hearing. At the hearing, Delta alleged it served Farina with notice of its initial claim in three different ways: (1) it mailed notice to his last known address; (2) it sent notice by certified mail with receipt, which was signed and returned; and (3) it sent notice by FedEx to his address, which required a signature. Further, Delta alleged Farina had actual notice because he contacted an attorney to represent him in the action and then decided not to retain the attorney. Delta also stated it employed Farina and that Farina was an employee for Delta at all times even though he worked for its Honduran facilities. Delta filed an affidavit from its employee, Deborah Merrill, supporting Delta's request for an award of $96,484.14 in damages, as well as alleging that Farina had regular contact with Delta's corporate offices in Greenville, South Carolina. The trial court ruled in Delta's favor.

A hearing for Farina's motion to dismiss was scheduled for November 7, 2011.[2] In his motion, Farina argued there were five issues with Delta's claim.

> Plaintiff's [sic] cannot be awarded a Default Judgment in a case that he cannot show proper proof of service

> I [Farina] have not had any relationship that could result in a monetary judgment award from a Family Court Division of South Carolina in favor of plaintiff

> I was employed as General Manager in plaintiff's Honduran subsidiary, Ceiba Textiles SRL, from October 2006 until my termination on June 2008

> Any labor matter from that relationship is under the jurisdiction of the labor law of a foreign country, Honduras

> Plaintiff is using South Carolina legal system to harass me, knowing well that I cannot afford legal representation and/or a personal appearance without losing a significant amount of income, jeopardizing my employment in these uncertain economic times, plus incurring in non-planned expenses.

Farina was present at the hearing, and he asserted he was a resident of Arizona, was working in northern Mexico, and had not been a resident of California since April of 2010. He claimed the first notice he received was in July of 2011 regarding Delta's motion for a default judgment scheduled to be heard on September 1, 2011. Delta denied all his claims and also maintained that while Farina labeled his motion as one pursuant to Rule 60(b), SCRCP, he did not allege any permissible grounds for relief under Rule 60(b), SCRCP. Farina responded that while he received notice of the motion for a restraining order, he thought the matter had been dropped and was not aware there was any other claim. He maintained the restraining order involved his judgment in Honduras, which was a matter not properly before the South Carolina court system. The trial court issued a Form 4 order denying Farina's Rule 60(b), SCRCP motion.

---

2. Farina's motion was captioned as a motion to dismiss, but he argued Rule 60(b), SCRCP, entitled him to relief from the judgment. Thus, the trial court addressed the motion as a Rule 60(b), SCRCP motion.

## STANDARD OF REVIEW

 "The decision whether to set aside an entry of default or a default judgment lies solely within the sound discretion of the trial judge." *Roberson v. S. Fin. of S.C., Inc.*, 365 S.C. 6, 9, 615 S.E.2d 112, 114 (2005) (citing *Thompson v. Hammond*, 299 S.C. 116, 119, 382 S.E.2d 900, 902–03 (1989)). "The trial court's decision will not be disturbed on appeal absent a clear showing of an abuse of that discretion." *Id.* (citing *Mitchell Supply Co., Inc. v. Gaffney*, 297 S.C. 160, 163, 375 S.E.2d 321, 323 (Ct.App.1988)). " 'An abuse of discretion in setting aside a default judgment occurs when the [trial court] issuing the order was controlled by some error of law or when the order, based upon factual, as distinguished from legal conclusions, is without evidentiary support.' " *Id.* (quoting *In re Estate of Weeks*, 329 S.C. 251, 259, 495 S.E.2d 454, 459 (Ct.App.1997)).

## LAW/ANALYSIS

### Rule 60, SCRCP

Despite captioning his motion as one to dismiss, Farina presented his arguments pursuant to Rule 60, SCRCP, which is a motion to relieve the party from a judgment or order. The relevant portion of Rule 60, SCRCP, provides:

(b) Mistakes; Inadvertence; Excusable Neglect; Newly Discovered Evidence; Fraud, etc. On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order, or proceeding for the following reasons:

(1) mistake, inadvertence, surprise, or excusable neglect;

(2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b);

(3) fraud, misrepresentation, or other misconduct of an adverse party;

(4) the judgment is void;

(5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application.

Rule 60(b), SCRCP. We will now address his arguments on appeal.

## Improper Service

Farina first argues the default judgment is void pursuant to Rule 60(b)(4), SCRCP, because he did not receive proper service of the summons and complaint. He contends the trial court therefore erred in denying his request to relieve him of the judgment. We disagree.

Rule 4, SCRCP, pertaining to proper service, "assures the defendant of reasonable notice of the action." *Roche v. Young Bros., Inc. of Florence*, 318 S.C. 207, 209, 456 S.E.2d 897, 899 (1995). To effect service on an individual such as Farina, Rule 4(a)(d)(1), SCRCP, provides service may be made by delivering a copy of the summons and complaint to him "personally or by leaving copies thereof at his dwelling house or usual place of abode with some person of suitable age and discretion then residing therein, or by delivering a copy to an agent authorized by appointment or by law to receive service of process."

Effective service of process can also be made upon an individual "by registered or certified mail, return receipt requested and delivery restricted to the addressee. Service is effective upon the date of delivery as shown on the return receipt." Rule 4(d)(8), SCRCP. Finally, service can be made upon an individual "by a commercial delivery service which meets the requirements to be considered a designated delivery service in accordance with 26 U.S.C. § 7502(f)(2)." Rule 4(d)(9), SCRCP. "Service is effective upon the date of delivery as shown in the delivery record of the commercial delivery service." *Id.* If service is by certified mail or commercial delivery service, it cannot be the basis for the entry of a default or a judgment by default unless the record contains a delivery record or return receipt showing acceptance by the defendant. Rule 4(d)(8)-(9), SCRCP. "Any such default or judgment by default shall be set aside pursuant to ... Rule 60(b) if the defendant demonstrates to the court that the delivery receipt [or return receipt] was signed by an unauthorized person." Rule 4(d)(8)-(9), SCRCP.

The movant in a Rule 60(b) motion has the burden of presenting evidence proving the facts essential to entitle him to relief. *BB & T v. Taylor*, 369 S.C. 548, 552, 633 S.E.2d 501, 503 (2006). "We have never required exacting compliance with the rules to effect service of process." *Roche v. Young Bros., Inc. of Florence*, 318 S.C. 207, 209–10, 456 S.E.2d 897, 899 (1995). "Rather, we inquire whether the plaintiff has sufficiently complied with the rules such that the court has personal jurisdiction of the defendant and the defendant has notice of the proceedings." *Id.* at 210, 456 S.E.2d at 899. "Further, an [officer's] return of process creates the legal presumption of proper service that cannot be 'impeached by the mere denial of service by the defendant.'" *Fassett v. Evans*, 364 S.C. 42, 47, 610 S.E.2d 841, 844 (Ct.App.2005) (quoting *Richardson Constr. Co. v. Meek Eng'g and Constr., Inc.*, 274 S.C. 307, 311, 262 S.E.2d 913, 916 (1980)).

Here, Delta presented an affidavit of service to the trial court. It stated the officer substituted service upon Pablo Farina at 9341 Parrot Avenue, Downey, California, and listed Pablo as a co-occupant residing with Farina at the home. The affidavit also indicated that Delta effected service by first class mail to the same residence in California. Delta included notice regarding the hearing for its motion for a restraining order with the summons and complaint. Farina admitted receiving notice of Delta's motion for a restraining order and further admits contacting an attorney regarding it. However, he maintained he thought the motion was a separate and distinct action, and he was not aware of the summons and complaint.

Delta complied with the rule for personal delivery and presented an affidavit of service to the trial court, and, thus, proper service is presumed. Farina admitted having notice of the motion for a restraining order, which was in the same delivery as the summons and complaint. Despite his claim that he was never served with the summons and complaint for this action, the officer's return of process cannot be impeached by Farina's mere denial of service. The address in California was his last known address, a fact which was supported by the tax notices Delta received from the California Tax Board. To prove he no longer resided in California, Farina only submitted an affidavit that was attached to his motion to dismiss, and

it contained a mere denial that Delta effected proper service. Farina stated he enclosed a copy of his Arizona voter registration with his affidavit, but the voter registration was not in the record on appeal.

Delta claims it also served notice to Farina in two other ways, first class mail with return receipt requested and FedEx with a return signature requested, but we do not address any deficiencies in those methods of service because we find service was proper based upon the personal delivery to an authorized person at Farina's last known address. Accordingly, we find the trial court did not abuse its discretion in denying Farina's motion for relief from judgment based on service of process.

**Personal Jurisdiction**

Farina contends the trial court erred in finding personal jurisdiction over him. Specifically, he argues Delta did not prove he had sufficient contacts with South Carolina such that a state court would have personal jurisdiction over him, and thus, he should be relieved from the judgment. *See Universal Benefits, Inc. v. McKinney,* 349 S.C. 179, 183, 561 S.E.2d 659, 661 (2002) ("The definition of void under [Rule 60(b), SCRCP] ... encompasses judgments from courts which ... lacked subject matter jurisdiction or personal jurisdiction."). We agree.

■ We first address Delta's contention that Farina did not preserve this argument for appellate review. *See Bakala v. Bakala,* 352 S.C. 612, 629, 576 S.E.2d 156, 165 (2003) ("Objections to personal jurisdiction, unlike subject matter jurisdiction, are waived unless raised."); *see also I'On, L.L.C. v. Town of Mt. Pleasant,* 338 S.C. 406, 422, 526 S.E.2d 716, 724 (2000) (stating the "losing party generally must both present his issues and arguments to the lower court and obtain a ruling before an appellate court will review those issues and arguments"). Here, Farina represented himself *pro se* and listed five arguments in his Rule 60, SCRCP motion. We believe the three arguments below are pertinent to the issue of personal jurisdiction.

I [Farina] have not had any relationship that could result in a monetary judgment award from a Family Court Division of South Carolina in favor of plaintiff

I was employed as General Manager in plaintiff's Honduran subsidiary, Ceiba Textiles SRL, from October 2006 until my termination on June 2008

Any labor matter from that relationship is under the jurisdiction of the labor law of a foreign country, Honduras

While Farina did not invoke the exact name of the legal doctrine of personal jurisdiction, we find the pertinent portions of his argument were sufficiently clear for the trial court to decide the issue. Thus, Farina preserved this issue for appellate review. *Herron v. Century BMW*, 395 S.C. 461, 466, 719 S.E.2d 640, 642 (2012) (stating that while a party is not required to use the exact name of a legal doctrine in order to preserve the issue, the issue must be "sufficiently clear to bring into focus the precise nature of the alleged error so that it can be reasonably understood by the judge").

"Personal jurisdiction is exercised as 'general jurisdiction' or 'specific jurisdiction.'" *Coggeshall v. Reprod. Endocrine Assocs. of Charlotte*, 376 S.C. 12, 16, 655 S.E.2d 476, 478 (2007). In this case, both parties' briefs analyze personal jurisdiction based upon specific jurisdiction rather than general jurisdiction; thus, our analysis will focus on specific jurisdiction. "Specific jurisdiction is the State's right to exercise personal jurisdiction because the cause of action arises specifically from a defendant's contacts with the forum; specific jurisdiction is determined under [section 36–2–803 of the South Carolina Code (2003)]." *Id.* (citing *Cockrell v. Hillerich & Bradsby Co.*, 363 S.C. 485, 491, 611 S.E.2d 505, 508 (2005)).

"'The determination of whether a court may exercise personal jurisdiction over a nonresident involves a two-step analysis.'" *Sullivan v. Hawker Beechcraft Corp.*, 397 S.C. 143, 150, 723 S.E.2d 835, 839 (Ct.App.2012) (quoting *Aviation Assocs. & Consultants, Inc. v. Jet Time, Inc.*, 303 S.C. 502, 505, 402 S.E.2d 177, 179 (1991)). "The trial court must (1) determine whether the South Carolina long-arm statute applies and (2) whether the nonresident's contacts in South Carolina are sufficient to satisfy due process." *Id.* (citing *Power Prods. & Servs. Co. v. Kozma*, 379 S.C. 423, 431, 665 S.E.2d 660, 664 (Ct.App.2008)).

"Due process requires that there exist minimum contacts between the defendant and the forum state such that

maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Cockrell,* 363 S.C. at 491, 611 S.E.2d at 508 (citing *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 474, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985)). "Further, due process mandates that the defendant possess sufficient minimum contacts with the forum state, so that he could reasonably anticipate being haled into court there." *Id.* at 491–92, 611 S.E.2d at 508 (citing *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980); *Atlantic Soft Drink Co. of Columbia, Inc. v. S.C. Nat'l Bank,* 287 S.C. 228, 231–32, 336 S.E.2d 876, 878–79 (1985)). "Without minimum contacts, the court does not have the 'power' to adjudicate the action." *Id.* at 492, 611 S.E.2d at 508 (citing *S. Plastics Co. v. S. Commerce Bank,* 310 S.C. 256, 260, 423 S.E.2d 128, 131(1992)). " 'The court must also find that the exercise of jurisdiction is reasonable or fair.' " *Id.* (quoting *S. Plastics Co.,* 310 S.C. at 260, 423 S.E.2d at 131).

We begin by determining whether our long-arm statute applies in this case. Farina signed a contract with Delta, whose corporate offices are located in Greenville, South Carolina, implicating section 36–2–803(A)(7) of the South Carolina Code (Supp.2012), which states "a court may exercise personal jurisdiction over a person who acts directly or by an agent as to a cause of action arising from the person's ... entry into a contract to be performed in whole or in part by either party in this State."

■ However, "[o]ur courts have held entering into a contract or mere negotiations inside South Carolina without more is not enough to establish minimum contacts." *Cribb v. Spatholt,* 382 S.C. 490, 501, 676 S.E.2d 714, 720 (Ct.App.2009); *see Loyd & Ring's Wholesale Nursery, Inc. v. Long & Woodley Landscaping & Garden Ctr., Inc.,* 315 S.C. 88, 92, 431 S.E.2d 632, 635 (Ct.App.1993) ("[A]n individual's contract with an out-of-state party cannot alone establish sufficient minimum contact's in the other party's home forum."). "The parties' prior negotiations, the consequences of their actions as contemplated by the parties, the terms of the contract, and the parties' actual course of dealings must be considered in evaluating whether a defendant purposefully established minimum contacts within the forum." *Loyd,* 315 S.C. at 92, 431 S.E.2d at 635.

Delta alleged in its complaint that the trial court had personal jurisdiction over Farina because Farina entered into an employment relationship with Delta, a corporation doing business in the state of South Carolina. Further, Delta claimed Farina engaged in an ongoing business relationship with Delta; however, Delta only offered Merrill's supplemental affidavit in support of its claims. In her affidavit, Merrill explained Delta's chief executive officer (CEO) and the vice president's offices are located in Greenville, and she asserted both had interviewed Farina and discussed the requirements of the position with him. She stated Farina inquired of Delta's CEO about his job responsibilities at the Ceiba plant and also held conversations with the vice president regarding his employee benefits, termination, and severance settlement. Finally, Merrill stated Farina was aware that Delta's corporate offices were in Greenville and that he had contact with individuals in the corporate offices on a regular basis.

Despite Delta's assertion that Farina had sufficient contacts with South Carolina to support a finding of personal jurisdiction, the California Tax Board sent its requests to withhold money from Farina's pay checks to offices in Duluth, Georgia. Further, Farina's severance settlement with Delta was executed in Duluth and filed in DeKalb County, Georgia. Despite Merrill's assertions within her affidavit, she never stated where the interview and conversations between Farina and Delta's corporate officers occurred, and Delta admitted in oral argument that Farina's interview occurred in North Carolina. Finally, Merrill never asserted that Farina came to Greenville for any of the other activities listed in the affidavit.

In light of these facts, we believe Farina established he did not have the minimum contacts required for the trial court to have personal jurisdiction over him. The California Tax Board's notices went to offices located in Duluth, Farina signed his severance settlement in Duluth, and Farina worked in Honduras during his employment. While Farina may have spoken with officers that worked in the Greenville corporate office, there was no evidence to show Farina ever traveled to South Carolina for those conversations. Thus, Farina's contacts do not establish that he would have reasonably expected to be haled in to court in South Carolina, nor were the contacts sufficient for this State to fairly exercise personal jurisdiction over him. Accordingly, we reverse the trial court

because South Carolina did not have personal jurisdiction over Farina.

### Res Judicata and Collateral Estoppel

■ Farina argues that this action cannot be affirmed because it should have been barred from the trial court pursuant to the legal doctrines of res judicata and collateral estoppel. Because he raises these issues for the first time on appeal, we find the issues are not preserved for appellate review. *See Dawkins v. Mozie*, 399 S.C. 290, 294–95, 731 S.E.2d 342, 345 (Ct.App.2012) ("Res judicata is an affirmative defense that must be pled at trial to be pursued on appeal. An affirmative defense is waived if not pled." (citing *RIM Assocs. v. Blackwell*, 359 S.C. 170, 182, 597 S.E.2d 152, 159 (Ct.App.2004))); *see also Duckett v. Goforth*, 374 S.C. 446, 465, 649 S.E.2d 72, 82 (Ct.App.2007) (stating a party cannot raise the affirmative defense of collateral estoppel for the first time on appeal); *S.C. Dep't of Transp. v. First Carolina Corp. of S.C.*, 372 S.C. 295, 301–02, 641 S.E.2d 903, 907 (2007) (finding that for an issue to be preserved for appellate review, it must have been: "(1) raised to and ruled upon by the trial court, (2) raised by the appellant, (3) raised in a timely manner, and (4) raised to the trial court with sufficient specificity").

### CONCLUSION

For the foregoing reasons, the trial court is **REVERSED.**

HUFF and GEATHERS, JJ., concur.