23090

PEOPLES FEDERAL SAVINGS AND LOAN ASSOCIATION and Loyola Federal Savings and Loan Association, Respondents v. MYRTLE BEACH RETIREMENT GROUP, INC., W. L. Williams, Gary R. Craven, Jack E. Shaw, J. Leonard Humphries, James E. Jordan, Covenant Towers Homeowners Association, Inc., New York Carpet World and John M. Pruitt, Receiver, of whom W. L. Williams, Myrtle Beach Retirement Group, Inc., Gary R. Craven, Jack E. Shaw, J. Leonard Humphries and James E. Jordan are Appellants.

Appeal of W. L. WILLIAMS, Myrtle Beach Retirement Group, Inc., Gary R. Craven, Jack E. Shaw, J. Leonard Humphries and James E. Jordan.

(387 S. E. (2d) 672)

Supreme Court

*Costa M. Pleicones,* of *Lewis, Babcock, Pleicones & Hawkins, for appellant W. L. Williams.*

*William C. Hubbard* and *Joel H. Smith* of *Nelson, Mullins, Riley & Scarborough,* Columbia, *for appellant Jack Shaw.*

*Linda W. Gwin,* of *Thompson, Henry & Gwin, PA,* Conway, *for appellant Gary Craven.*

*James E. Jordan, Registered Agent,* Surfside Beach, for *Myrtle Beach Retirement Group, Inc.*

*Howell V. Bellamy, Jr.* and *Preston B. Haines, III,* of *Bellamy, Rutenberg, Copeland, Epps, Gravely & Bowers,* Myrtle Beach, *for appellants J. Leonard Humphries* and *James E. Jordan.*

*Michael W. Battle,* of *Lovelace & Battle, P.A.,* Conway, *for* respondents.

*John M. Pruitt, Receiver, Robert W. Dibble, Jr.,* and *Jane W. Trinkley,* of *McNair Law Firm, P.A.,* Columbia, *for Loyola Federal Sav. and Loan Ass'n.*

Heard March 20, 1989.

Decided Oct. 16, 1989.

FINNEY, Justice:

This is an appeal of the master's construction of two guaranty agreements which held that the agreements were valid and enforceable as to each guarantor in an amount up to 25% of the total initial indebtedness. We affirm.

In 1984, appellant Myrtle Beach Retirement Group, Inc. (MBRG) borrowed $10,590,000 from respondent Peoples Federal Savings and Loan Association (Peoples) to construct a condominium project known as "Covenant Towers." Appellants Jack E. Shaw (Shaw), W. L. Williams (Williams), Gary Craven (Craven), J. Leonard Humphries (Humphries), and James E. Jordan (Jordan) were at all relevant times shareholders in MBRG. Respondent Loyola Federal Savings and Loan Association (Loyola) is a party to this action because Peoples assigned an eighty (80%) percent interest in two of the three notes to Loyola. For purposes of this appeal, Peoples and Loyola occupy the same position.[1]

As part of the inducement for the loan, appellants Williams, Craven, Shaw, Humphries and Jordan[2] signed

---

[1] Defendant New York Carpet World was dismissed as a party after representing it had no material interest in the property being foreclosed.
[2] James L. Jordan filed personal bankruptcy and is not a party to this appeal.

guaranties which jointly and severally provided for the repayment of $10,590,000 together with interest and any other sums paid under the note and mortgage of MBRG. The guaranties further provided that the limit of liability for each guarantor was twenty-five (25%) percent of the debt of MBRG. At the same time MBRG signed the note for $10,590,000, it executed a second note for $125,000. By separate guaranty, appellants Williams, Craven, Shaw, Humphries and Jordan jointly and severally guaranteed the lesser note without limitation on the amount of liability.

Construction began on Covenant Towers and the loan proceeds were disbursed to MBRG. In February of 1985, a problem arose over the fact that the building contractor submitted change order draw requests totaling $802,441 more than the loan proceeds. The problem was resolved in January of 1986 when Peoples and Loyola made an additional loan of $430,000 to MBRG. As part of the inducement for the $430,000 loan, appellants Williams, Craven, Shaw, Humphries and Jordan signed guaranties similar to those used to guarantee the $10,590,000 note. Each guarantor's liability was again limited to twenty-five (25%) percent of the debt set out in the guaranty.

Subsequently, MBRG went into default on all indebtedness, and Peoples instituted a suit for collection and foreclosure. After several hearings, the master ordered judgment against MBRG on the notes and ordered foreclosure of the mortgage and the sale of Covenant Towers. No appeal was taken from that order. Thereafter, the master ordered judgment in favor of Peoples and Loyola on the guaranties. MBRG, Williams, Craven, Shaw and Humphries appealed from the order.

The issue on appeal is whether the master erred in applying a twenty-five (25%) percent limitation on each guarantor's liability for two of the notes given by MBRG as follows:

(a) First note dated July 16, 1984; each guarantor was found liable for twenty-five (25%) percent of the face amount of $10,590,000 or $2,647,500.

(b) Second note dated February 5, 1986; each guarantor was found liable for twenty-five (25%) percent of the face amount of $430,000 or $107,000.

Appellants contend the master erred in finding the guarantors individually liable for twenty-five (25%) percent of the face amount of each of the two notes. Appellants assert that each guarantor should be liable for twenty-five (25%) percent of the "balance" after foreclosure. The balance after foreclosure was $3,029,000; so under this theory each guarantor would be liable for $757,250.

A guaranty is a contract and is to be construed by the principles governing contracts. The construction of a guaranty calls for a reasonable interpretation of the language used in the instrument, and a court has the duty to ascertain the intention of the parties at the time the contract was made. *Bruce v. Blalock*, 241 S. C. 155, 127 S. E. (2d) 439 (1962). The intention of the parties as expressed in the guaranty should guide the court. *McGee v. F. W. Poe Mfg. Co.*, 176 S. C. 288, 180 S. E. 48 (1935).

The relevant portion of the guaranty agreement reads as follows:

This is a guaranty of payment and not of collection. The liability of the undersigned on this guaranty shall be direct and immediate and not conditional or contingent upon either the pursuit of any remedies against the BORROWER or any other person or foreclosure of the Mortgage or any other security interest or liens available to the BANK, its successors, enforcees or assigns. The undersigned waives any right to require that an action be brought against the BORROWER or any other person or to require that the Mortgage be foreclosed or that the resort be had to any other security. If the Note is partially paid through foreclosure of the Mortgage, or through election of the Bank, its successors, endorsees or assigns to pursue any other remedy mentioned in this paragraph or if the Note is otherwise partially paid, the undersigned shall remain liable for the balance thereof. Provided, however, it is understood and agreed that notwithstanding any other provision herein or in any other document in reference to the within described loan to the contrary, the limit of liability of the undersigned shall be twenty-five (25%) percent of the debt of Myrtle Beach Retirement Group, Inc., as set out herein.

In the present case the guaranties were absolute guaranties of payments and not guaranties of collection. Under an absolute guaranty of payment, the creditor may maintain an action against the guarantor immediately upon default of the debtor. *Southern Bank & Trust Co. v. Harley*, 292 S. C. 340, 356 S. E. (2d) 410 (Ct. App. 1987), *modified* 295 S. C. 423, 368 S. E. (2d) 908 (1988). A guaranty of collection conditions liability of the guarantor upon prosecution of the primary debtor without success. *McGee v. F. W. Poe Mfg. Co.*, 180 S. E. at 51.

Since Peoples and Loyola could not pursue the guarantors immediately, all parties were concerned about the maximum exposure faced by each guarantor at the time the loans were made. The maximum exposure was set at a definite amount, twenty-five (25%) percent of the loan amount or debt to be incurred by MBRG. The maximum exposure on the first note was $2,647,500 and the maximum exposure on the second note was $107,500. This was the intent of the parties as expressed in their written agreement. The guarantors are entitled to have the proceeds of foreclosure applied to reduce the debt, not to reduce the contractual limit of liability under this guaranty agreement. *See Southern Bank & Trust Co.*, 356 S. E. (2d) at 411.

We find that the guarantors agreed to pay any balance remaining after a foreclosure sale but their individual liability was limited to 25% of the initial loans not 25% of the balance after foreclosure. This Court holds that the master's construction of the guaranty agreements was appropriate and affirm his order.

Affirmed.

GREGORY, C. J., and HARWELL, CHANDLER and TOAL, JJ., concur.