705 S.E.2d 453

Robert COAKE and Susan Coake, Appellants/Respondents,

v.

Kathleen BURT, n/k/a Kathleen Thomason, Respondent/Appellant.

No. 4761.

Court of Appeals of South Carolina.

Heard June 22, 2010:

Decided Dec. 1, 2010.

Rehearing Denied Feb. 28, 2011.

James A. Blair, III and Kirsten E. Small, both of Greenville, for Appellants/Respondents.

Harold P. Threlkeld, of Anderson, for Respondent/Appellant.

LOCKEMY, J.

Robert and Susan Coake (the Coakes) argue the trial court erred in granting Kathleen Thomason Davis's [1] (Davis) motion for a directed verdict on their cause of action for violation of the Residential Property Condition Disclosure Act [2] (the Disclosure Act). Davis cross-appeals and maintains the trial court erred in failing to award her attorney's fees. We reverse.

## FACTS

In July 2004, the Coakes purchased property located at 2203 East North Avenue in Anderson, South Carolina (the Property) from Davis for $296,900. The Property consisted of a house, free-standing garage and apartment, pool, and pool

---

1. Formerly known as Kathleen Burt.

2. S.C.Code Ann. §§ 27–50–10 to –110 (2007).

house on approximately two acres. Prior to the sale, Davis completed a Residential Property Condition Disclosure Statement (the Disclosure Statement) as required by the Disclosure Act. In addition, a licensed professional home inspector hired by the Coakes completed an inspection of the Property on June 28, 2004. According to Robert Coake, he did not receive the inspection report until during or after the closing on July 13, 2004. Robert Coake spent between one and two hours personally inspecting the Property before closing.

In May 2005, the Coakes filed suit against Davis alleging she violated the Disclosure Act and committed fraud. During a jury trial held in July 2007, the Coakes alleged Davis failed to make certain disclosures in the Disclosure Statement regarding the Property.[3] The Coakes alleged Davis made the following misrepresentations:

1. Underground fuel tank

The Coakes alleged Davis failed to disclose an underground fuel tank on the Property. Item number 14 on the Disclosure Statement required Davis to identify whether any "[e]nvironmental hazards (substances, materials or products) including asbestos, formaldehyde, radon gas, methane gas, lead-based paint, underground storage tank, toxic mold or other hazardous material (whether buried or covered), contaminated soil or water, or other environmental contamination" were located on the Property. Davis checked "Yes," underlined "asbestos," and wrote "# 14 asbestos is present in basement" in the explanation area provided at the bottom of the Disclosure Statement. Davis testified it was not her intention to not disclose the underground tank, and that she disclosed it by checking "Yes."

---

3. The Disclosure Statement enumerates twenty-four items concerning various aspects of the Property that may have problems. For each item on the Disclosure Statement, the homeowner can answer "Yes," "No," or "No Representation." According to the instructions, a "Yes" answer requires the homeowner to explain the problem. Furthermore, a "No" answer indicates the homeowner has no actual knowledge of any problem. Davis admitted she did not read the instructions prior to completing the statement.

## 2. Water leakage in basement

The Coakes alleged Davis failed to disclose water leakage in the basement. Item number 3 asked whether there was any "[w]ater seepage, leakage, dampness or standing water or water intrusion from any source in any area of the structure." Davis answered "No." She testified that although she knew about the leakage, she did not consider it to be a problem.

## 3. Termite bond

The Coakes alleged Davis incorrectly asserted there was a transferrable termite bond on the Property. In the Disclosure Statement, Davis indicated there was a transferrable termite bond on the Property. After closing, the Coakes discovered the termite bond expired two years before the sale. Davis testified she indicated there was a transferrable termite bond on the Property because she "assumed" there was a transferrable bond.

## 4. Wood rot

The Coakes alleged Davis failed to disclose rotten wood on the garage doors and in the pool house. Davis indicated she did not have any knowledge of problems with any of the structural components of the Property. At trial, Davis testified she checked "No" because she was not aware of any problems with the garage or pool house.

## 5. Security system

The Coakes alleged Davis incorrectly asserted the house had a working security system. While Davis indicated the house had a working security system, Robert Coake testified the security system did not work. According to Davis, she stopped paying the security company when she moved out of the house two years before the sale, but the security system worked while she lived in the house.

## 6. Pool house plumbing

The Coakes alleged Davis failed to disclose problems with the plumbing in the pool house. Davis indicated there were no problems with any of the plumbing on the Property. The

Coakes later discovered the pool house had no hot water because the supply line had become encased in concrete.

Robert Coake testified $10,090 of the $38,390 he and his wife spent on repairs and improvements to the Property was for repairs related to Davis's misrepresentations. The repairs made by the Coakes included: $2,500 for a new alarm system, $2,040 for filling and capping the underground fuel tank, $500 for repairs to the pool house plumbing, $450 for miscellaneous repairs by a contractor, and $4,600 for repairing wood rot in the garage, apartment, and pool house. In January 2006, the Coakes sold the Property for $440,000.

After the Coakes presented their case to the jury, the trial court granted a directed verdict to Davis on the Coakes' fraud claim. Following the presentation of Davis's case, the trial court granted a directed verdict to Davis on the Coakes' cause of action for violation of the Disclosure Act. In a written order, the trial court found a genuine issue of fact existed as to whether Davis disclosed any material information on the Disclosure Statement that she knew to be false, incomplete, or misleading. In addition, the trial court found the Coakes' failure to conduct a reasonable examination of the Property and to review the inspection report violated their duty to exercise reasonable diligence or discretion to protect their own interests. The trial court determined the Coakes failed to prove damages because they realized a profit from the sale of the Property, did not repair all of the items that were not disclosed by Davis, and failed to relate any expenditure directly to Davis's failure to disclose. Thereafter, the Coakes moved for a reconsideration of the trial court's ruling on their Disclosure Act claim, and Davis moved for an award of attorney's fees and costs. The trial court denied both motions. This appeal followed.[4]

## STANDARD OF REVIEW

In reviewing a motion for directed verdict, the appellate court applies the same standard as the circuit court. *Welch v. Epstein*, 342 S.C. 279, 299, 536 S.E.2d 408, 418 (Ct.App.2000). The court must view the evidence and the

4. The Coakes did not appeal the trial court's grant of a directed verdict on their fraud claim.

inferences that can reasonably be drawn in the light most favorable to the nonmoving party. *Sabb v. South Carolina State Univ.*, 350 S.C. 416, 427, 567 S.E.2d 231, 236 (2002). If the evidence as a whole is susceptible of more than one reasonable inference, a jury issue is created and the motion should be denied. *Bailey v. Segars*, 346 S.C. 359, 366, 550 S.E.2d 910, 913 (Ct.App.2001).

## LAW/ANALYSIS

### I. The Coakes' Appeal

#### A. Reasonable Inspection

■ The Coakes argue the trial court erred in granting Davis's directed verdict motion because the evidence presented at trial permits more than one reasonable inference as to whether the Coakes reasonably inspected the Property. We agree.

The trial court determined the Coakes violated their duty to exercise reasonable diligence or discretion to protect their interests. In its order, the trial court noted the Coakes spent less than two hours inspecting the Property, and the defects complained of were open and obvious to anyone making a reasonable examination of the Property. Furthermore, the trial court noted the Coakes failed to review the home inspection report.

In addition to requiring sellers to disclose defects in their property, the Disclosure Act also requires buyers to inspect the property. *See* S.C.Code Ann. § 27–50–80 (2007) ("This article does not limit the obligation of the purchaser to inspect the physical condition of the property and improvements that are the subject of a contract covered by this article."). We find the evidence presented at trial allows for more than one reasonable inference as to whether the Coakes reasonably inspected the Property. Robert Coake testified he spent between one and two hours inspecting the Property before closing. Coake further testified his inspection was hindered by several factors including: (1) the rotten wood had been recently painted, (2) excessive overgrowth of vegetation prevented him from discovering the oil tank, and (3) the termite damage was not discoverable until the pool house floor was

removed. Coake also testified the home inspection report was not available until it was faxed during or after the closing, and he and his wife were under time pressure to close because the closing date specified on the purchase contract had passed.

While the trial court determined the Coakes did not exercise reasonable diligence or discretion to protect their own interests, the reasonableness of the Coakes' actions is a factual question to be decided by the jury. *See Unlimited Serv., Inc. v. Macklen Enter., Inc.,* 303 S.C. 384, 387, 401 S.E.2d 153, 155 (1991) (holding questions concerning reliance and its reasonableness are factual questions for the jury); *see also Slack v. James,* 364 S.C. 609, 615, 614 S.E.2d 636, 639 (2005) (holding a question of fact exists as to whether a Buyer's reliance on a Seller's misrepresentation is reasonable). Accordingly, we find the trial court erred in failing to submit the question of whether the Coakes made a reasonable examination of the Property to the jury.[5]

## B. Damages

▇ The Coakes also argue the trial court erred in finding they failed to present sufficient evidence of damages from Davis's non-disclosures to submit the question of damages to the jury. We agree.

The trial court determined the Coakes failed, as a matter of law, to prove actual damages resulting from any alleged false, incomplete, or misleading disclosure made by Davis. In its order, the trial court noted the Coakes purchased the Property for less than $300,000 and spent less than $40,000 on repairs before selling the Property for $440,000. The trial court concluded that while the Coakes submitted a list of expenses in the amount of $38,398, those expenses related to improvements that presumably enabled them to realize a $143,100 gain from the sale of the Property.

---

5. We decline to reach the issue of whether the scope of the Disclosure Statement extends to the detached structures on the Property. *See I'On, L.L.C. v. Town of Mt. Pleasant,* 338 S.C. 406, 420, 526 S.E.2d 716, 723 (2000) (holding it is within the appellate court's discretion whether to address any of respondent's additional sustaining grounds); *Id.* at 421, 526 S.E.2d at 724 (stating the appellate court is "likely to ignore" any additional sustaining grounds not presented to the trial court).

Pursuant to the Disclosure Act, "[a]n owner ... who discloses any material information on the disclosure statement that he knows to be false, incomplete, or misleading is liable for actual damages proximately caused to the purchaser and court costs." S.C.Code Ann. § 27–50–65 (2007). According to Robert Coake, he and his wife spent $10,090 on repairs for items not disclosed by Davis in the Disclosure Statement. Coake testified the repairs included: $2,500 for a new alarm system, $2,040 for filling and capping the underground fuel tank, $500 for repairs to the pool house plumbing, $450 for miscellaneous repairs by a contractor, and $4,600 for repairing wood rot in the garage, apartment and pool house. Coake further testified he was not claiming damages for any repairs that had not been made. We find the evidence presented at trial allows for more than one reasonable inference as to whether the Coakes established damages. Therefore, the trial court erred in failing to submit the issue of damages to the jury.

## II. Davis's Appeal

Davis argues the trial court erred in failing to award her attorney's fees. Specifically, Davis contends she is entitled to attorney's fees as the prevailing party pursuant to section 27–50–65 of the South Carolina Code (2007). Based upon our reversal of the trial court's grant of a directed verdict, we need not address Davis's appeal. *Futch v. McAllister Towing of Georgetown, Inc.*, 335 S.C. 598, 613, 518 S.E.2d 591, 598 (1999) (holding an appellate court need not review remaining issues when its determination of a prior issue is dispositive of the appeal).

## CONCLUSION

Accordingly, the trial court's grant of a directed verdict on the Coakes' cause of action against Davis for violation of the Disclosure Act is

**REVERSED.**

KONDUROS and GEATHERS, JJ., concur.