# THE STATE OF SOUTH CAROLINA
## In The Court of Appeals

Stephen Wilkinson, as Trustee of George B. Buchanan,
Jr. Irrevocable Family Trust Dated the 15th day of July,
2001, Respondent,

v.

Redd Green Investments, LLC, Anderson North Augusta,
LLC, Herbert Anderson, Jr., A. Bruce Green, Herbert
Keith Anderson, and L. Cliff Redd, Defendants,

Of which Redd Green Investments, LLC, A. Bruce
Green, and L. Cliff Redd are Appellants.

Appellate Case No. 2018-001388

———————

Appeal From Saluda County
R. Knox McMahon, Circuit Court Judge

———————

Opinion No. 5880
Heard March 3, 2021 – Filed December 15, 2021

———————

**AFFIRMED**

———————

Wallace K. Lightsey and William Marvin Wilson, III,
both of Wyche Law Firm, of Greenville; and M. Alan
Peace, of Harrell, Martin, & Peace, P.A., of Chapin, all
for Appellants.

John T. Moore, Allen Mattison Bogan, and Nicholas
Andrew Charles, all of Nelson Mullins Riley &
Scarborough, LLP, of Columbia; and Erik Tison Norton,

of Harrell, Martin, & Peace, P.A., of Chapin, all for Respondent.

_____

**LOCKEMY, C.J.:**  In this action to enforce a guaranty agreement, Redd Green Investments, LLC, A. Bruce Green, and L. Cliff Redd (collectively, Guarantors) appeal the trial court's grant of a directed verdict in favor of Stephen Wilkinson as Trustee of the George B. Buchanan, Jr. Irrevocable Family Trust dated the 15th of July, 2001 (the Trust).  Guarantors argue the trial court erred in finding that as a matter of law the Trust's violation of section 15-39-720 of the South Carolina Code (2005)[1] could not operate as a defense to its enforcement of the guaranty agreements.  We affirm.

## FACTS

In 2001, George B. Buchanan, Jr. (Buchanan), created and funded the Trust for the benefit of his children.  On November 18, 2009, the Trust entered into a loan agreement with Springs North Augusta, LLC, in which the Trust agreed to loan it $7,590,000 to purchase 1,420 acres of real property in Aiken County (the Property).  Springs North Augusta executed a promissory note agreeing to repay the loan in full with interest of 15% per annum and executed a mortgage on the Property in favor of the Trust to secure the loan.  On November 16, 2010, Springs North Augusta and the Trust signed an amendment to the loan agreement, which capitalized the interest to the principal, bringing the new principal to $8,728,500.  Springs North Augusta also signed a modification to the promissory note and agreed to repay the new balance of the loan plus 15% interest per annum.

The loan agreement named Herbert Anderson, Jr., Herbert Keith Anderson, A. Bruce Green, William Otha Bodie, L. Cliff Redd, Redd Green Investments, LLC, and Anderson North Augusta, LLC, as guarantors, and they signed two separate guaranty agreements guaranteeing repayment of the loan.  The guaranty agreements gave the Trust the right to obtain payment from Guarantors to satisfy any unpaid debt of Springs North Augusta.  Redd Green Investments, LLC and Anderson North Augusta, LLC, signed one agreement; Herbert Anderson, Jr., Herbert Keith Anderson, A. Bruce Green, William Otha Bodie, and L. Cliff Redd signed the other.  Redd Green Investments, LLC, and Anderson North Augusta,

_____

[1] Section 15-39-720—also referred to as the "bidding" statute—provides that a "mortgagee or his representative" is permitted to bid only once at a judicial foreclosure sale.

LLC, owned Springs North Augusta, which they formed to hold title to the Property.  A. Bruce Green and L. Cliff Redd formed Redd Green Investments, LLC to hold their ownership interest in Springs North Augusta.[2]  The guaranty agreements contained a "Waiver of Appraisal Rights" provision,[3] which stated:

> **TO THE FULLEST EXTENT PERMITTED BY LAW AND AS A MATERIAL INDUCEMENT FOR LENDER TO MAKE THE LOAN, GUARANTOR HEREBY WAIVES AND RELINQUISHES THE STATUTORY APPRAISAL RIGHTS WHICH MEANS THE HIGH BID AT THE JUDICIAL FORECLOSURE SALE WILL BE APPLIED TO THE DEBT REGARDLESS OF ANY APPRAISED VALUE OF THE MORTGAGED PROPERTY.**

Springs North Augusta defaulted under the terms of the Note, and the Trust filed an action to foreclose its lien on the Property.  The Trust named Springs North Augusta—the only other party to the mortgage—as the sole defendant in the action.  Springs North Augusta failed to answer, and the circuit court entered an order of default and mandatory order of reference.  The master-in-equity entered an order of foreclosure and sale, ordering the Property to be sold at auction and the proceeds applied to the outstanding principal and interest totaling $9,450,622.50.

On September 4, 2012, the Trust bid $6.6 million at the foreclosure sale.  The master held the sale open for thirty days for upset bids.  The master held the deficiency sale on October 4, 2012, and Second Avenue Holdings, LLC (Second Avenue)—of which Buchanan was the sole member and manager—was the successful bidder in the amount of $7,160,000 and made a deposit of $500,000 towards the bid.  Second Avenue and the Trust then "reached an agreement" pursuant to which Second Avenue assigned the bid back to the Trust "for value received."  The master entered an order of deficiency against Springs North Augusta for $2,484,163.95 on October 26, 2012, which was amended on February 13, 2013, to $2,753,192.70, plus 15% annual interest.

---

[2] Herbert Anderson Jr. and Herbert Keith Anderson owned Anderson North Augusta, LLC.  The Andersons and their company are not parties to this appeal.
[3] *See* S.C. Code Ann. § 29-3-680 (2007) (providing "a defendant against whom a personal judgment may be taken on a real estate secured transaction may waive the appraisal rights as provided by this section").

Thereafter, the Trust brought this action to collect the deficiency judgment from Guarantors. Guarantors asserted several defenses and counterclaims. First, they claimed Second Avenue was created six days after the Trust entered its bid, that it was created for competitive bidding on behalf of the Trust, and that the Trust controlled it. Guarantors alleged the Trust's claims were barred by the equitable doctrines of laches and unclean hands, equitable estoppel, judicial estoppel, and waiver because the Trust violated the provisions of section 15-39-720 by bidding through a "straw man" at the second foreclosure sale. In addition, Guarantors alleged counterclaims for civil conspiracy, constructive fraud, and fraud and deceit. After the trial court denied the Trust's motions to dismiss and for summary judgment, the case proceeded to a jury trial on September 5, 2017. At trial, Guarantors withdrew their counterclaims "as counterclaims, but not as the factual basis for the defenses."

Stephen Wilkinson, who took over as the trustee of the Trust in August 2013, testified Buchanan established the Trust, which was an irrevocable trust, to put aside assets for his children and to eliminate estate taxes. He stated Buchanan could give him financial advice concerning the Trust as needed and could add funds to the Trust but had no other control of the Trust. Wilkinson explained that as of the time of trial, the Property was actively on the market but the Trust had not received any written offers to purchase.

Green testified that when Springs North Augusta first acquired the Property it was worth $30 million. He agreed Springs North Augusta was unable to pay off the loan because the real estate values had been "tanking" and they had no means to repay the loan as a result. Green testified that when the Trust filed the foreclosure action, he assumed the value of the land satisfied the Trust and he believed that he, Redd, and Redd Green Investments were "clear." Redd testified that if asked the same questions, his testimony would be the same as Green's.

Buchanan maintained he formed Second Avenue three or four years before the foreclosure sale. He acknowledged, however, that Second Avenue filed its articles of incorporation with the State of South Carolina on September 10, 2012. Buchanan testified he met with the trustee after the foreclosure sale and the trustee stated he would like to have the Property back as a long-term investment for the Trust. Second Avenue therefore assigned the bid back to the Trust, and in exchange, the Trust repaid Second Avenue the amount of the $500,000 deposit.

At the conclusion of the testimony, the Trust moved for a directed verdict, arguing (1) Guarantors could not collaterally attack the foreclosure sale, (2) whether the

Trust violated the bidding statute was a question of law, (3) a violation of the statute did not excuse the debt, (4) such a violation would only result in an offset, which Guarantors had not established, and (5) at best, the jury could conclude a subsequent breach occurred after the Guarantors were already in default of the guaranty agreement, which would not excuse their performance. Although the trial court initially noted that viewing the evidence in the light most favorable to Guarantors, the jury could infer a violation of section 15-39-720 occurred, the trial court concluded a violation of section 15-39-720 was not a defense on a guaranty of a debt. It therefore directed a verdict in favor of the Trust for $4,781,882.65.[4] Guarantors filed a motion for a new trial, which the trial court denied. This appeal followed.

**ISSUE ON APPEAL[5]**

Did the trial court err in ruling that as a matter of law a mortgagee's violation of section 15-39-720 in a prior foreclosure action cannot serve as a defense to a subsequent action for breach of guaranty when the guarantor was not a party to the prior foreclosure action?

**STANDARD OF REVIEW**

"In reviewing a motion for directed verdict, the appellate court applies the same standard as the circuit court. The court must view the evidence and the inferences that can reasonably be drawn in the light most favorable to the nonmoving party." *Coake v. Burt*, 391 S.C. 201, 205-06, 705 S.E.2d 453, 455 (Ct. App. 2010) (citation omitted). "Motions for directed verdict or JNOV should be denied if the evidence yields more than one reasonable inference or its inference is in doubt." *Allegro, Inc. v. Scully*, 418 S.C. 24, 32, 791 S.E.2d 140, 144 (2016). "An appellate court will reverse only whe[n] there is no evidence to support the trial judge's ruling, or whe[n] the ruling was controlled by an error of law." *Ecclesiastes Prod. Ministries v. Outparcel Assocs., LLC*, 374 S.C. 483, 491, 649 S.E.2d 494, 498 (Ct. App. 2007).

---

[4] This figure accounted for the additional $2,028,689.85 in interest that had accrued since the foreclosure sale.

[5] Guarantors' stated issues on appeal are virtually identical; thus, we address both issues as one.

**LAW AND ANALYSIS**

Guarantors argue the Trust breached the implied obligation of good faith and fair dealing when it violated section 15-39-720, thereby precluding the Trust from collecting a deficiency from Guarantors. They assert section 15-39-720 protects borrowers by permitting a mortgagee to bid only once, on the first day of the foreclosure auction, and by forbidding the mortgagee or anyone acting on its behalf from bidding a second time or offering an upset bid at the final auction. Guarantors contend the Trust's violation of the statute deprived them of the Trust's high bid. Guarantors therefore argue the trial court erred in concluding section 15-39-720 did not provide a defense to a suit to collect a payment obligation on the guaranty. We disagree.

Section 15-39-720 states:

> In all judicial sales of real estate for the foreclosure of mortgages and sales in execution the bidding shall not be closed upon the day of sale but shall remain open until the thirtieth day after such sale, exclusive of the day of sale. Within such thirty day period *any person other than the highest bidder at the sale or any representative thereof in foreclosure and execution suits may enter a higher bid* upon complying with the terms of sale by making any necessary deposit as a guaranty of his good faith, *and thereafter within such period any person, other than such highest bidder at the sale or any representative thereof, in foreclosure suits may in like manner raise the last highest bid*, and the successful purchaser shall be deemed to be the person who submitted the last highest bid within such period and made the necessary deposit or guaranty. *But the mortgagee or his representative shall enter such bid as he desires at the time the sale is made, and he and all persons acting in his behalf shall be precluded from entering any other bid in any amount at any other time except the single or last bid made by him or in his behalf at the sale.* . . .
>
> The bidding shall be reopened by the officer making the sale on the thirtieth day after the sale, exclusive of the day of the sale, at eleven o'clock in the

> forenoon and the bidding shall be allowed to continue
> until the property shall be knocked down in the usual
> custom of auction to the successful highest bidder
> complying with the terms of sale.  The sales officer shall
> announce the sales about to be closed and shall receive
> the final bids in such sales in the order determined by
> him.

(emphases added).

We decline to address the question of whether the Trust violated section 15-39-720 because the trial court acknowledged evidence existed from which the jury could find a violation.  Nevertheless, we conclude the trial court did not err in ruling Guarantors could not assert a violation of the statute as a defense to the Trust's action to enforce the guaranty.  The Guarantors' attempt to challenge the amount of the deficiency judgment is barred by res judicata and even assuming a violation of the statute, Guarantors failed to show such violation prejudiced them such that they should be relieved from their responsibilities under the guaranty agreement.

"The doctrine of res judicata provides that final judgment on the merits of an action precludes the parties or their privies from relitigating claims that were or could have been raised in that action." *Venture Eng'g, Inc. v. Tishman Constr. Corp. of S.C.*, 360 S.C. 156, 162, 600 S.E.2d 547, 550 (Ct. App. 2004) (quoting *In re S.N.A. Nut Co.*, 215 B.R. 1004, 1008 (1997)); *see also Pye v. Aycock*, 325 S.C. 426, 432, 480 S.E.2d 455, 458 (Ct. App. 1997) ("To establish *res judicata*, three elements must be shown: (1) the identities of the parties is the same as a prior litigation; (2) the subject matter is the same as the prior litigation; and (3) there was a prior adjudication of the issue by a court of competent jurisdiction.").  "The concept of privity rests not on the relationship between the parties asserting it, but rather on each party's relationship to the subject matter of the litigation." *Yelsen Land Co. v. State*, 397 S.C. 15, 22, 723 S.E.2d 592, 596 (2012).  "The term 'privy,' when applied to a judgment or decree, means one so identified in interest with another that he represents the same legal right.  One in privity is one whose legal interests were litigated in the former proceeding." *Roberts v. Recovery Bureau, Inc.*, 316 S.C. 492, 496, 450 S.E.2d 616, 619 (Ct. App. 1994).

"A guaranty of payment is an absolute or unconditional promise to pay a particular debt if it is not paid by the debtor at maturity.  Under an absolute guaranty of payment, the creditor may maintain an action against the guarantor immediately

upon default of the debtor." *Citizens & S. Nat'l Bank of S.C. v. Lanford*, 313 S.C. 540, 543, 443 S.E.2d 549, 550 (1994) (citation omitted).

> A guaranty is a contract and is to be construed by the principles governing contracts. The construction of a guaranty calls for a reasonable interpretation of the language used in the instrument, and a court has the duty to ascertain the intention of the parties at the time the contract was made. The intention of the parties as expressed in the guaranty should guide the court.

*Peoples Fed. Sav. & Loan Ass'n v. Myrtle Beach Ret. Grp., Inc.*, 300 S.C. 277, 280, 387 S.E.2d 672, 673 (1989) (citation omitted).

This action and the foreclosure action involved the same subject matter: Springs North Augusta's debt to the Trust and the foreclosure sale. In addition, both actions arose from Springs North Augusta's default on the note and mortgage. The master held a foreclosure sale, and no one challenged the foreclosure proceedings. Following the sale, the master entered the deficiency judgment, which determined Springs North Augusta's remaining debt to the Trust. Therefore, the master decided the issue of the amount of the unpaid debt in the prior foreclosure action. Although the Trust did not name Guarantors in the foreclosure action, Guarantors were privies with Springs North Augusta. Both parties had a shared interest in obtaining the lowest deficiency judgment possible because Guarantors were responsible for any unpaid debt of Springs North Augusta. *See Lanford*, 313 S.C. at 543, 443 S.E.2d at 550 ("A guaranty of payment is an absolute or unconditional promise to pay a particular debt if it is not paid by the debtor at maturity."). Green and Redd owned Redd Green Investments, and Redd Green Investments was one of two companies that owned Springs North Augusta. Moreover, Green acknowledged he was aware that Springs North Augusta defaulted on the loan and that there was a pending foreclosure action. As direct or indirect owners of Springs North Augusta, Guarantors had notice of the foreclosure action yet failed to participate in those proceedings. Guarantors could have challenged Second Avenue's participation in the bidding process in the prior action but did not do so. Res judicata bars Guarantors' attempt to challenge the process by way of a defense in this action. Because Guarantors cannot collaterally attack the foreclosure sale, we conclude the trial court did not err in directing the verdict in favor of the Trust.

Further, even assuming a violation, Guarantors have failed to show the alleged violation of the bidding process prejudiced them when no evidence shows what the

winning bid would have been had Second Avenue not placed the highest bid. Guarantors concede they did not challenge the amount of the judgment in the foreclosure suit and do not seek to undo the sale. The express terms of the guaranty provided it was an absolute guaranty of payment and that Guarantors waived their right to an appraisal. *See Peoples Fed. Sav. & Loan Ass'n*, 300 S.C. at 280, 387 S.E.2d at 673 ("A guaranty is a contract and is to be construed by the principles governing contracts. The construction of a guaranty calls for a reasonable interpretation of the language used in the instrument, and a court has the duty to ascertain the intention of the parties at the time the contract was made. The intention of the parties as expressed in the guaranty should guide the court." (citation omitted)). Although Green testified the Property was worth about $30 million in 2009, there is no evidence—other than the amount of the highest bid at the foreclosure sale—of the fair market value of the Property at the time of the foreclosure sale. Guarantors argue evidence shows the Trust valued the Property at $15 million following the foreclosure sale and it was therefore reasonable to conclude the Trust would have bid the full debt amount of $9.5 million if it had acted in compliance with the bidding statute. Guarantors mentioned this $15 million figure during the parties' pretrial discussions with the trial court, but no evidence in the record supports this value. The original loan was for $7,590,000, which Springs North Augusta used to purchase the Property. The winning bid of $7,160,000 demonstrated no party was willing to bid more than $7,160,000 for the Property and there was no evidence Guarantors would have been in a better position had a third party purchased the Property. *See Peoples Fed. Sav. & Loan Ass'n v. Myrtle Beach Ret. Grp., Inc.*, 302 S.C. 223, 234 n.1, 394 S.E.2d 849, 855 n.1 (Ct. App. 1990) (Cureton, J., concurring) (noting "it is assumed that because a third party did not buy the property at the foreclosure sale no one else was interested in purchasing the property at the price paid by the lender"). Even assuming the Trust violated the statute, Guarantors failed to demonstrate the sale price would have been higher but for Second Avenue's actions and thus failed to show the alleged violation prejudiced them. We therefore conclude the trial court did not err in determining that even assuming the Trust violated section 15-39-720, such violation could not serve as a defense to the enforcement of the guaranty. Thus, the trial court did not err in granting the Trust's motion for a directed verdict.

**CONCLUSION**

For the foregoing reasons, we affirm the trial court's grant of a directed verdict in favor of the Trust.

**AFFIRMED.**

**HUFF and HEWITT, JJ., concur.**