723 S.E.2d 592

**YELSEN LAND COMPANY, INC., Appellant,**

**v.**

**The STATE of South Carolina and the State Ports Authority, Respondents.**

No. 27103.

Supreme Court of South Carolina.

Heard Feb. 9, 2012.

Decided March 14, 2012.

16

Lawrence E. Richter, Jr. and Alice Richter Lehrman, both of Mount Pleasant, and Donald Bruce Clark, of Charleston, for Appellant.

Attorney General Alan Wilson and Assistant Deputy Attorney General J. Emory Smith, Jr., both of Columbia, for Respondents.

Justice PLEICONES.

This is an action by appellant to declare that it is the owner of a 700–acre area adjacent to its Morris Island property. The Master granted the State and the State Ports Authority (SPA) (collectively respondents) summary judgment, and appellant appeals. We affirm, finding res judicata applies to bar appellant's attempt to relitigate title to this property.

## FACTS

In 1969, the State sued appellant[1] alleging the State owned "all tidelands, submerged lands, and waters" adjacent to Morris Island. Appellant answered and claimed it owned all the tidelands, submerged lands, and marshes adjacent to Morris Island. Appellant also counterclaimed for trespass on those lands by the Corps of Engineers in the form of spoilage dredged from Charleston Harbor, the digging of a ditch, and the erection of a dike. In the first appeal, the Supreme Court held that the legal questions of title to the land should be tried

---

1. At that time two entities, appellant Yelsen and Dajon, claimed title to the property. Both appellant and Dajon were controlled by the same individual. Sometime later, Dajon deeded its interest to appellant. For simplicity's sake, we will refer to appellant as the plaintiff in the 1969 suit.

to a jury and that the trial judge erred in denying the State a jury trial. *State v. Yelsen Land Co.*, 257 S.C. 401, 185 S.E.2d 897 (1972).

The jury returned a general verdict for the State, having been charged that title to tidelands, submerged lands, and all land below the high water mark on navigable streams are presumptively the State's unless the entity claiming title can show a specific grant from the sovereign that included the words "to the low water mark." It was also charged that it was to determine title to marshlands and to return damages for appellant if it found the State had trespassed on marshland owned by appellant or if it found a taking.

Following the jury verdict, appellant moved for a judgment *non obstante verdicto* and a new trial, both of which the trial judge denied in a written order. The judge appended a map with red lines drawn upon it to illustrate the land determined to belong to the State. On appeal, this Court noted that it was conceded that appellant owned the Morris Island highlands, and that what was at issue was title to the adjacent tidelands. *State v. Yelsen*, 265 S.C. 78, 79, 216 S.E.2d 876, 877 (1975). The dispositive issue on appeal was whether the trial court erred in failing to direct a verdict for appellant on the title issue.[2] The Court held "there was no evidence to sustain the claims of title of [appellant] to the tidelands in question . . . ." *id.* at 83, 216 S.E.2d at 879, and affirmed. We will refer to this decision as *Yelsen I* because the parties and the Master do so, although it is technically *Yelsen II*.

*Yelsen I* was commenced by the State in 1969 in a complaint alleging "The State of South Carolina is the owner of all the tidelands, submerged lands, and waters adjacent to Morris Island. . . ." The record in this case reflects, however, that in December 1967 the SPA had taken the tidelands of Morris Island "for use as a spoil disposal area . . . a necessary part of the dredging operation in Charleston Harbor" pursuant to S.C.Code Ann. § 54–3–170 (1992). Section 54–3–170 provides:

> The [SPA] may take, exclusively occupy, use and possess, in so far as may be necessary for carrying out the provisions of this chapter, any areas of land owned by the State and

---

2. Appellant also raised claims related to the statute of limitations, the admission of evidence, and the jury charge.

within the counties of Beaufort, Charleston and George-
town, not in use for State purposes, including swamps and
overflowed lands, bottoms of streams, lakes, rivers, bays,
the sea and arms thereof and other waters of the State and
the riparian rights thereto pertaining. When so taken and
occupied, due notice of such taking and occupancy having
been filed with the Secretary of State, such areas of land
are hereby granted to and shall be the property of the
[SPA]. For the purposes of this section, the meaning of the
term *"use"* shall include the removal of material from and
the placing of material on any such land. In case it shall be
held by any court of competent jurisdiction that there are
any lands owned by the State which may not be so granted,
then the provision of this section shall continue in full force
and effect as to all other lands owned by the State. The
provisions of this section are subject to all laws and regula-
tions of the United States with respect to navigable waters.

Later in December 1967, the SPA gave the federal govern-
ment a "Spoil Disposal Easement" over the Morris Island
tidelands it had just condemned.[3] This document identifies
the SPA as "a body corporate and politic through the instru-
mentality of which [SPA] the State may engage in [port
activities] ... the [SPA] is specifically charged as an agency of
the State to co-operate with [the federal government, et
al.]. . . ." SPA's acquisition of the tidelands in 1967, well prior
to the institution of the State's 1969 title suit against appel-
lant, is an important component of appellant's arguments. We
note, however, that appellant's pleading in *Yelsen I* includes
trespass claims predicated on the spoilage being deposited on
those tidelands, and that at the *Yelsen I* trial there was
testimony that title to the land was at issue in 1967 because
the Corps "needed a spoil disposal area and had requested the
[SPA], as agent for the State, to acquire" it. The attorney
conducting the title search for the State and the SPA in 1967
testified he spoke with both appellant's principal and his
attorney in 1967 as appellant planned to buy Morris Island.
There is little question but that appellant was well aware of
the SPA's interest in the land as a spoilage site before the
purchase.

---

3. A second twenty-five year easement was granted in 1992.

In 1968, the Corps began depositing spoilage in the Morris Island tidelands. In 2007, appellant brought this suit against the State contending that the dredging spoils placed in the tidelands had created new highlands, and that as the adjacent highland owner, it was the owner of the newly "accreted" highlands as well. The SPA sought to intervene, but in lieu of intervention appellant was permitted to amend its complaint to add the SPA.

The amended complaint alleged three causes of action:

1) State has no interest in the new highlands because it had transferred title to the tidelands to the SPA in 1967;

2) Appellant's title, allegedly derived from sovereign grants, was superior to the SPA's; and

3) Appellant was the owner of the newly created highlands by virtue of accretion.

The Master granted summary judgment to respondents on all three theories, and this appeal follows.

## ISSUE

Did the Master err in granting summary judgment to respondents?

## ANALYSIS

Appellant concedes, as it must, that the 1975 case determined it did not have title to the tidelands. Appellant contends, however, that since SPA took title to those tidelands in 1967, neither it nor the State can assert either res judicata or collateral estoppel with regard to the 1975 decision in *Yelsen I.* We agree with the Master that the doctrine of res judicata applies between the State and appellant to establish that the State owns the tidelands and appellant does not. Moreover, the State and the SPA are in privity as to this title issue, and thus as between appellant and the SPA, title resides in the State and not in appellant.

Appellant's claim to the newly created highlands essentially rests on two theories: (1) that since the State no longer had title to the tidelands when it brought *Yelsen I* in 1969, that decision is not binding; and (2) that newly discovered documents in appellant's chain of title establish a sovereign grant

to the tidelands. Appellant's theories seeking to avoid res judicata are disposed of by *Caston v. Perry*, 17 S.C.L. (1 Bailey) 533 (1830).

In *Caston*, the plaintiffs, as tenants in common, had previously prevailed against the defendant in an action to try title to a parcel of land. In that suit, each party's claim was based on "lines" (metes and bounds). The plaintiffs then brought a second suit against the defendant for trespass. Defendant raised the issue of superior title in this second suit, alleging that before the judgment had been entered in the first case, one of the plaintiff's interest in the land had been sold at an execution sale, and that the defendant had purchased the title from the buyer at the sale. The *Caston* Court held the defendant's title claim was barred:

> The record of recovery in the former suit between these parties is conclusive of the defendant's rights. . . . The defendant had, at that time, the very title on which he now relies, at least his conveyance bears date long anterior; and whether the former suit depended on the extent of the lines, or the title itself, is wholly immaterial. If one, having a dozen different titles, could set them up in succession in this way, a plaintiff might be kept in Court all his life. The defendant was a stranger to the plaintiffs; they had a right to sue him, and he was bound to defend himself. If he had a title, by which he could claim to be a co-tenant with the plaintiffs, he should have produced it.

A later judge explained that *Caston* establishes that "a recovery by a plaintiff in trespass to try titles is conclusive between the parties as to all titles which the defendant had at the time of trial. . . ." *Dorn v. Beasley*, 28 S.C. Eq. (7 Rich. Eq.) 84 (S.C.App.Eq.1854) (quote from Chancellor's decision).

Two rules can be derived from the *Caston* decision. First, even a plaintiff who does not have good title, but who prevails against the defendant in that first suit, has good title as against that defendant. Second, a defendant may not relitigate title based on newly discovered documents in his chain where those documents predate the first judgment. Applying those rules to this case, the State has title to the tidelands as against any claim by appellant by virtue of *Yelsen I*. As between these two parties, it matters not whether the

State had good title as against another (i.e., the SPA), or even against appellant, as that is settled. Second, the newly discovered evidence proffered by appellant at this trial as to his title, even if probative (which the Master found it was not) would not entitle appellant to relitigate his claim to the "new" highlands.

 The Master held res judicata barred all three of appellant's claims. Res judicata's fundamental purpose is "to ensure that 'no one should be twice sued for the same cause of action.'" *Judy v. Judy*, 393 S.C. 160, 173, 712 S.E.2d 408, 414 (2011) (internal citation omitted). Res judicata bars a second suit where there is (1) identity of parties; (2) identity of subject matter; and (3) adjudication of the issue in the first suit. *Judy*, at 167, 712 S.E.2d at 412. The evidence supports the Master's conclusion that res judicata settles the title issue as between the State and appellant.

 The Master also held that the SPA and the State are in privity with regard to appellant's title claim, and that both respondents are entitled to assert against appellant that title to the tidelands is res judicata in light of *Yelsen I*. Appellant asserts, however, that the State and the SPA cannot rely on privity here because "it only applies if [they] were basing their claims on the same set of facts" and that while the State relies on *Yelsen I* the SPA relies on its 1967 statutory taking. For purpose of res judicata, however, the concept of privity rests not on the relationship between the parties asserting it, but rather on each party's relationship to the subject matter of the litigation. *E.g. Richburg v. Baughman*, 290 S.C. 431, 351 S.E.2d 164 (1986) ("The term 'privy' when applied to a judgment or decree means one so identified in interest with another that he represents the same legal rights."). Viewing the subject matter here as appellant's claim of title to the marshlands, and assuming that the State and the SPA are separate entities for purposes of res judicata, we agree with the Master that the State and the SPA are in privity to the extent the issue is appellant's claim of title to the Morris Island tidelands.

Appellant next contends that the SPA waived its right to rely on the *Yelsen I* judgment because it asserted in its motion to intervene that it owned the property pursuant to the 1967

statutory taking. The Master found no waiver, however, because the SPA's proposed answer specifically alleged res judicata and collateral estoppel. Appellant next asserts the State waived its right to rely on res judicata because it did not contest the SPA's claim to ownership based on the 1967 condemnation but instead adopted that view. The Master found, however, that the State did not waive res judicata or collateral estoppel because it specifically pled these doctrines in opposing appellant's motion to amend its complaint after the SPA was allowed to intervene, and because the State pled a continued interest after 1967 by virtue of the Public Trust Doctrine.

Waiver is a question of fact. *Laser Supply and Servs., Inc. v. Orchard Park Assocs.*, 382 S.C. 326, 676 S.E.2d 139 (Ct.App.2009). The record is replete with evidence to support the Master's findings that neither the SPA nor the State waived res judicata. Appellant relies heavily upon *Kelly v. Para–Chem Southern, Inc.*, 311 S.C. 223, 428 S.E.2d 703 (1993) to argue that the State waived its right to rely on its *Yelsen I* judgment by admitting the SPA's 1967 condemnation. This argument ignores the Master's finding that the State asserts a continuing interest in the property under the Public Trust Doctrine. That ruling is not challenged by appellant and is therefore the law of the case. *E.g., ML–Lee Acquisition Fund, L.P. v. Deloitte & Touche*, 327 S.C. 238, 489 S.E.2d 470 (1997) (unchallenged ruling, whether correct or not, is law of the case).

The Master correctly held the doctrine of res judicata bars appellant's right to relitigate title to the tidelands around Morris Island and to deny the State's title to those lands. As between appellant and any other party, res judicata or collateral estoppel establishes appellant has no claim, and the State has title.

We agree with the Master that res judicata bars appellant's suit, and therefore the appealed order is

**AFFIRMED.**

TOAL, C.J., BEATTY, KITTREDGE and HEARN, JJ., concur.