737 S.E.2d 502

The SOUTH CAROLINA PUBLIC INTEREST FOUNDATION
and Edward D. Sloan, Jr., individually, and on behalf of
all others similarly situated, Respondents,

v.

GREENVILLE COUNTY, Herman G. Kirven, Jr., Judy Gilstrap,
Eric Bedingfield, Jim Burns, Scott Case, Joseph Dill, Cort
Flint, Lottie Gibson, Mark Kingsbury, Xanthene Norris, Robert
Taylor, and Toney Trout, Appellants.

Appellate Case No. 2010–154507.

No. 5016.

Court of Appeals of South Carolina.

Heard June 7, 2012.

Decided Aug. 1, 2012.

Withdrawn, Substituted, and Refiled Jan. 23, 2013.

Boyd B. Nicholson, Jr. and Bonnie A. Lynch, both of Haynsworth Sinkler Boyd, PA, of Greenville, for Appellants.

James G. Carpenter and Jennifer J. Miller, both of Carpenter Law Firm, PC, of Greenville, for Respondents.

GEATHERS, J.

Respondents, South Carolina Public Interest Foundation (SCPIF) and Edward D. Sloan, Jr., brought this declaratory judgment action against Appellants, Greenville County and the individual members of Greenville County Council (Council) (collectively, the County), challenging the County's establishment of the "County Council Reserves" account as an unlawful delegation of legislative authority. The County seeks review

of the trial court's order granting summary judgment to Respondents, arguing that the account in question is lawful and Respondents' current action is barred by res judicata. The County also seeks review of a second order granting Respondents' request for attorney's fees and costs. We reverse.

## FACTS/PROCEDURAL HISTORY

For its 1994–95 fiscal year, the County established an account in its annual operating budget entitled "County Council Reserves." Funds in this account were set aside to enable Council to address "special community needs not normally falling with [sic] the operational purview of County government" and to "provide for nonrecurring community requests." In 1996, Council adopted a resolution limiting the use of the Council Reserves account to "infrastructure purposes such as flooding and drainage, roads, lights, sewer, and public buildings and grounds."

In 1996, Edward D. Sloan, Jr. (Sloan), filed an action against the County challenging the legality of the Council Reserves account, beginning with fiscal year 1994–95. Sloan's Third Amended Complaint listed donations from the County to several private organizations and political subdivisions spanning "from 1994 through September, 1997." The complaint, which set forth eleven causes of action, took issue with the use of Council Reserves for non-county matters. The complaint also cited perceived procedural irregularities in the continued use of Council Reserves without Council voting on each expenditure or appropriation. In the complaint's "Sixth Cause of Action," Sloan alleged that the creation and use of the Council Reserves account violated section 7–81 of the Greenville County Code.

In the complaint, Sloan sought a declaration that establishing the Council Reserves account and disbursing public funds as described in the complaint violated "the applicable statutes, Constitutions, ordinances, and policies." Sloan also sought preliminary and permanent injunctions against the County's "appropriation, expenditure, disbursement, and donation of public funds from the 1996–97 'Council Reserves' in violation of the S.C. Constitution and Code and the Greenville County

Codes [sic] regarding procedures for appropriation and expenditures." Sloan subsequently filed a motion for summary judgment. In his supporting memorandum, Sloan explained his allegation that the Council Reserves account violated section 7–81 of the County of Greenville, South Carolina Code of Ordinances (Greenville County Code) as follows:

[Section 7–81(b) requires that] all "requests for county funds will be submitted to council for review during the regular county budget process...." Rather than the *entire council* reviewing "requests for county funds" that are "submitted for council review during the regular county budget process," *individual council members* receive requests throughout the year and respond to them by submitting *individual requisitions* to the clerk of county council....

(emphasis added). The summary judgment motion and supporting memorandum requested, among other relief, an order enjoining Council's appropriations of public funds to entities when: (1) the appropriations were not made by County Council as a whole, but rather by individuals in violation of section 7–81(a) of the Greenville County Code, and (2) the requests were not submitted to Council during the regular county budget process, in violation of section 7–81(b) of the Greenville County Code. On February 10, 1998, the circuit court conducted a bench trial on stipulated facts. The circuit court subsequently issued an order ruling that the County was entitled to judgment in its favor, with one exception not relevant to this case.[1] The circuit court concluded that Council had complied with section 7–81. The circuit court stated that there was nothing in the record to support a finding that the County's actions rose "to the level of illegality in violation of the County Code." Sloan did not appeal this order.

 Subsequently, on August 2, 2005, the County passed an ordinance adopting its budget for the 2006–07 fiscal year. Included in the operating expenses for the County Council Division of the Legislative and Administrative Services Department were line items for the Council Reserves, which

---

1. The circuit court addressed in a separate order a proposed disbursement to the Crestwood Forest Village Committee. The court found that this proposed disbursement was in violation of Council's guidelines for use of Council Reserves.

included a separate line item for each Council member. Each individual Council member's routine expenses were funded from these line items. The line items were also available to fund costs "associated with special, non-recurring community requests for infrastructure purposes" and for "contributions to local governments in Greenville County for community projects." More specifically, each Council member's expenses and costs, designated as "Council District Expense," were described by the County as follows:

Funds for a Council Member to address:

• Cost of general business supplies such as pens, paper, stationary, . . . ;

• Cost of special documents, incentives and awards given either to the public or county employees . . . ;

• Cost of periodicals, professional journals, and reference books;

• Cost of per diem and mileage involved in the conduct of county business;

• Costs associated with community functions, conferences and training seminars . . . ;

• Costs associated with special, non recurring [sic] community requests for infrastructure purposes such as:

 • Flooding
 • Roads
 • Lights
 • Sewer and drainage
 • Public buildings and grounds
 • Infrastructure related studies

• Contributions to local governments in Greenville County for community projects; . . . .

In 2006, Sloan, along with SCPIF, the foundation he chaired, filed the present action, challenging the Council Reserves account, a/k/a the "Council District Expense" account, within the County's 2006–07 budget.[2] In their complaint, Respondents specifically challenged "[c]osts associated with special,

---

2. The complaint indicates that this account has been "variously known as the Council District Expense Fund, Council Reserves, Discretionary Funds, or the Slush Fund." Likewise, in its appellate brief, the County indicates that several years after creating the Council Reserves account, it began using the name "Council District Expense" for the account.

nonrecurring community requests for infrastructure purposes[.]" The complaint's sole cause of action states, "Council's delegation of legislative power to an individual member ... is unconstitutional and illegal, as explained in a South Carolina Attorney General opinion dated November 13, 2003[.]"[3]

In their complaint, Respondents also sought injunctive relief as well as a declaration that Council's "delegation of [its] discretionary spending authority" was "illegal, invalid, and unconstitutional." The County submitted a motion to dismiss, and the parties submitted cross-motions for summary judgment. In its motion to dismiss, the County asserted that the present action was barred by res judicata and collateral estoppel. However, at the motions hearing, the County expressly waived its collateral estoppel defense.

Relying on *Commissioner of Internal Revenue v. Sunnen,* 333 U.S. 591, 68 S.Ct. 715, 92 L.Ed. 898 (1948), the circuit court concluded that the action was not barred by res judicata by reasoning that the County's different fiscal years were comparable to the different tax years at issue in *Sunnen.* The circuit court also ruled that the creation of the Council Reserves account constituted an illegal delegation of legislative authority by Council to its individual members. However, the court declined to base its ruling on constitutional grounds, stating: "Plaintiffs have alleged a Constitutional basis for the legal proposition that County Council may not delegate legislative authority. However, Defendants' concession that County Council may not delegate legislative authority makes it unnecessary to decide whether this prohibition is based on the Constitution or not."

In a separate hearing, the circuit court received evidence on Respondents' attorney's fees, pursuant to section 15–77–300 of the South Carolina Code (Supp.2011).[4] The court subsequent-

---

For the remainder of this opinion, we refer to the account as "Council Reserves."

3. Attorney General opinions are persuasive but not binding authority. *Charleston Cnty. Sch. Dist. v. Harrell,* 393 S.C. 552, 560–61, 713 S.E.2d 604, 609 (2011).

4. In a case brought by a party contesting "state action," section 15–77–300 authorizes an award of attorney's fees to the prevailing party, other

ly issued an order granting Respondents' request for
$60,084.15 in fees and costs incurred through January 31,
2010. The court also allowed Respondents to "file an affidavit
addressing fees incurred after January 31, 2010." This appeal
followed.[5]

## ISSUES ON APPEAL

1. Did the circuit court err in concluding that the present
action was not barred by res judicata?

2. Did the circuit court err in concluding that the creation
of the Council Reserves account unlawfully delegated legis-
lative authority to Council members in their individual
capacities?

3. Did the circuit court err in awarding attorney's fees and
costs to Respondents?

## STANDARD OF REVIEW

### Summary Judgment

■ This court reviews the grant of a summary judgment
motion under the same standard applied by the trial court
pursuant to Rule 56(c), SCRCP. *Jackson v. Bermuda Sands,
Inc.*, 383 S.C. 11, 14 n. 2, 677 S.E.2d 612, 614 n. 2 (Ct.App.
2009). Rule 56(c), SCRCP, provides that summary judgment
shall be granted when "the pleadings, depositions, answers to
interrogatories, and admissions on file, together with the
affidavits, if any, show that there is no genuine issue as to any
material fact and that the moving party is entitled to a
judgment as a matter of law." "The purpose of summary
judgment is to expedite the disposition of cases not requiring
the services of a fact finder." *Matsell v. Crowfield Plantation
Cmty. Servs. Ass'n, Inc.*, 393 S.C. 65, 70, 710 S.E.2d 90, 93
(Ct.App.2011) (citing *George v. Fabri*, 345 S.C. 440, 452, 548
S.E.2d 868, 874 (2001)).

---

than the State or a political subdivision of the State, under certain
circumstances.

5. The County timely filed a Notice of Appeal following each of the two
orders issued by the circuit court; the appeals were consolidated.

In the present case, the circuit court noted in its order: "The parties agree that the case presents questions of law to be decided on undisputed facts." Neither party challenges this statement on appeal. Therefore, this court need not determine whether there are genuine issues of fact. The court need only concern itself with the resolution of questions of law.

### Attorney's Fees

■ In a case brought by a party who is contesting state action, a court may award attorney's fees to the prevailing party, unless the prevailing party is the State or any political subdivision of the State, if (1) the court finds that the agency acted without substantial justification in "pressing its claim against the party[;]" and (2) the court finds that there are no special circumstances that would make the award of attorney's fees unjust. S.C.Code Ann. § 15–77–300 (Supp.2011). An appellate court may not disturb such an award unless the appellant shows that the trial court abused its discretion in considering the applicable factors. *Heath v. Cnty. of Aiken,* 302 S.C. 178, 182, 394 S.E.2d 709, 711 (1990).

### LAW/ANALYSIS

## I. Res Judicata

The County maintains the circuit court erred in concluding that the present action was not barred by res judicata. We agree.

### A. South Carolina Law

■■ "Res judicata bars subsequent actions by the same parties when the claims arise out of the same transaction or occurrence that was the subject of a prior action between those parties." *Judy v. Judy,* 393 S.C. 160, 172, 712 S.E.2d 408, 414 (2011) (citation omitted). "Under the doctrine of res judicata, a litigant is barred from raising any issues which were adjudicated in the former suit and any issues which might have been raised in the former suit." *Id.* (citation and quotation marks omitted).

■ "Res judicata bars relitigation of the same cause of action while collateral estoppel bars relitigation of the same

facts or issues necessarily determined in the former proceeding." *Pye v. Aycock,* 325 S.C. 426, 436, 480 S.E.2d 455, 460 (Ct.App.1997). In *Beall v. Doe,* this court distinguished the two concepts as follows:

> The doctrines of res judicata and collateral estoppel are, of course, two different concepts. A final judgment on the merits in a prior action will conclude the parties and their privies under the doctrine of res judicata in a second action based on the same claim as to issues actually litigated and as to issues which might have been litigated in the first action. Under the doctrine of collateral estoppel, on the other hand, the second action is based upon a different claim and the judgment in the first action precludes relitigation of only those issues actually and necessarily litigated and determined in the first suit.

281 S.C. 363, 369 n. 1, 315 S.E.2d 186, 190 n. 1 (Ct.App.1984) (citations and quotation marks omitted).

■■ "Res judicata's fundamental purpose is to ensure that no one should be twice sued for the same cause of action." *Yelsen Land Co. v. State,* 397 S.C. 15, 22, 723 S.E.2d 592, 596 (2012) (citation and quotation marks omitted). "The doctrine [of res judicata] flows from the principle that *public interest* requires an end to litigation and no one should be sued twice for the same cause of action." *Duckett v. Goforth,* 374 S.C. 446, 464, 649 S.E.2d 72, 81 (Ct.App.2007) (emphasis added) (citation omitted); *see also S.C. Dep't of Soc. Servs. v. Basnight,* 346 S.C. 241, 248, 551 S.E.2d 274, 278 (Ct.App.2001) (" 'The doctrine of res adjudicata (or res judicata) in the strict sense of that time-honored Latin phrase had its origin in the principle that it is in the public interest that there should be an end of litigation and that no one should be twice sued for the same cause of action.' " (quoting *First Nat'l Bank of Greenville v. U.S. Fid. & Guar. Co.,* 207 S.C. 15, 24, 35 S.E.2d 47, 56 (1945))).

"The doctrine of collateral estoppel, or issue preclusion, on the other hand, rests generally on equitable principles." *Town of Sullivan's Island v. Felger,* 318 S.C. 340, 344, 457 S.E.2d 626, 628 (Ct.App.1995) (citing *Watson v. Goldsmith,* 205 S.C. 215, 31 S.E.2d 317 (1944)). In *Watson,* our supreme

court contrasted the origin of the doctrine of collateral estoppel with the origin of res judicata:

Estoppel rests generally on equitable principles, which res judicata does not, but upon the two maxims which were its foundation in the Roman law, *nemo debet bis vexari pro eadem causa* (no one ought to be twice sued for the same cause of action) and *interest reipublicae ut sit finis litium* (it is the interest of the state that there should be an end of litigation[ ])[.] ... Res judicata is rather a principle of public policy than the result of equitable considerations, which [the] latter estoppel is.

205 S.C. at 221–22, 31 S.E.2d at 319–20 (citations omitted) (emphasis added); *see also First Nat'l Bank of Greenville*, 207 S.C. at 24, 35 S.E.2d at 56–57 (citing *Watson*) (contrasting the origins of res judicata and collateral estoppel).

In the present case, the parties do not dispute that the 1996 action involved the same parties or their privies—Sloan brought the 1996 action; and, along with SCPIF, the foundation he chaired, he brought the present action.[6] *See Yelsen*, 397 S.C. at 22, 723 S.E.2d at 596 (holding that the concept of privity rests on each party's relationship to the subject matter of the litigation); *Richburg v. Baughman*, 290 S.C. 431, 434, 351 S.E.2d 164, 166 (1986) ("The term 'privy', when applied to a judgment or decree, means one so identified in interest with another that he represents the same legal right. One in privity is one whose legal interests were litigated in the former proceeding.").

However, Respondents maintain that in the 1996 action, the circuit court neither ruled on nor could have ruled on the County's 2006 and 2007 appropriations and expenditures. Respondents argue that res judicata does not bar their challenge to these specific appropriations because "the allegations arise from different fiscal years." We find this argument unavailing. In the present action, Respondents' complaint challenges the legality of the *practice* underlying these expenditures, i.e., use of the Council Reserves account as a delegation of legislative authority to individual Council members, a practice continuing from year to year since the 1994–95 fiscal year.

---

6. In his affidavit dated February 19th, 2007, Sloan stated that he was the Chairman of the Board of Directors and President of SCPIF.

Likewise, the Third Amended Complaint in the 1996 action challenged this same practice with regard to multiple fiscal years.

In determining whether allegations arising from different fiscal years must be brought in the same action, the *Restatement (Second) of Judgments* is instructive:

(1) When a valid and final judgment rendered in an action extinguishes the plaintiff's claim pursuant to the rules of merger or bar ... the claim extinguished includes all rights of the plaintiff to remedies against the defendant with respect to *all or any part of the transaction, or series of connected transactions, out of which the action arose.*

(2) *What factual grouping constitutes a "transaction", and what groupings constitute a "series", are to be determined pragmatically,* giving weight to such considerations as whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage.

*Restatement (Second) of Judgments* § 24 (1982 & Supp.2012) (emphasis added). The plaintiff's claim is extinguished even when the plaintiff is "prepared in the second action (1) [t]o present evidence or *grounds or theories of the case* not presented in the first action, or (2) [t]o seek remedies or forms of relief not demanded in the first action." *Id.* at § 25 (emphasis added).

Here, the "Sixth Cause of Action" in Sloan's 1996 complaint effectively challenged the creation and use of the Council Reserves account as an illegal delegation of legislative authority in violation of section 7–81 of the Greenville County Code. *See* Greenville County Code § 7–81 (requiring the appropriation of public funds to be made only by Council as a body); *Gregory v. Rollins,* 230 S.C. 269, 274, 95 S.E.2d 487, 490 (1956) ("It is fundamental that the appropriation of public funds is a legislative function."). The circuit court, in the 1996 action, concluded that Council had complied with section 7–81. The circuit court stated that there was nothing in the record to support a finding that the County's actions rose "to the level of illegality in violation of the County Code." Sloan did not appeal the circuit court's ruling. In the present action, Re-

spondents base their claim challenging the creation and use of the Council Reserves account on the ground that the Council's delegation of legislative power to its individual members is "unconstitutional." [7]

Even if a constitutional challenge to the Council's delegation of authority to individual members through the Council Reserves account was neither raised nor ruled on in the 1996 action, the theory could have been brought in the prior action. Hence, both the cause of action and this theory of relief are barred in the present action. *See Restatement (Second) of Judgments* §§ 24, 25 (1982 & Supp.2012) (applying claim preclusion "with respect to all or any part of the transaction, or series of connected transactions, out of which the [first] action arose" even when the plaintiff is prepared to present a theory in the second action not presented in the first action).

In *Judy*, our supreme court addressed the question of whether a claim should have been raised in a prior action and stated:

> *Res judicata bars subsequent actions by the same parties when the claims arise out of the same transaction or occurrence that was the subject of a prior action between those parties.* Under the doctrine of res judicata, "[a] litigant is barred from raising any issues which were adjudicated in the former suit and any issues which might have been raised in the former suit."

393 S.C. at 172, 712 S.E.2d at 414 (quoting *Plum Creek Dev. Co. v. City of Conway*, 334 S.C. 30, 34, 512 S.E.2d 106, 109 (1999)) (emphasis added). The court also explained the term "cause of action" for res judicata purposes: *"[F]or purposes of res judicata, "cause of action" is* not the form of action in which a claim is asserted but, rather *the cause for action, meaning the underlying facts combined with the law giving the party a right to a remedy of one form or another based thereon." Id.* (emphasis added) (citations and quotation marks omitted).

---

7. Neither Respondents' pleadings nor their appellate brief cite any specific constitutional provision supporting the general assertion that the use of the Council Reserves account is unconstitutional. Further, at oral argument, counsel did not articulate any specific constitutional provision on which Respondents may rely for their assertion.

■ Here, Respondents' claim, which challenges the County's use of the Council Reserves account to delegate spending authority to its individual members, constitutes the "same transaction or occurrence" that was the subject of the prior case. Although the budget years and dollar amounts differ, the *"cause for action,"* as defined in *Judy,* is the same in both the 1996 action and the present action.

Our supreme court's recent discussion of res judicata in *Judy* acknowledged that there are certain circumstances in which the policy underlying the doctrine of res judicata is outweighed by a more compelling policy; there, the court looked to the *Restatement (Second) of Judgments* § 26 for guidance on those circumstances in which courts should decline to apply res judicata. 393 S.C. at 168 n. 5, 712 S.E.2d at 412 n. 5 (quoting *Restatement (Second) of Judgments* § 26(1)(a)-(c) (1982 & Supp.2011)); *see also Restatement (Second) of Judgments* § 26(1)(a)-(f) cmts. a-j (1982 & Supp.2012) (discussing exceptions to the general rule against claim splitting). Nonetheless, in *Judy,* the court did not find any of these exceptions applicable to the plaintiff's filing of a claim for waste in circuit court after having raised a waste claim in his probate court pleadings. 393 S.C. at 168–74, 712 S.E.2d at 412–15. Likewise, we find none of these exceptions applicable to Respondents' present claim. The parties have not cited, nor have we found, any binding authority applying any of these exceptions to a case with facts similar to the present case.

■ While the potential adverse impact on the public interest has been recognized as a reason to depart from the doctrine of collateral estoppel,[8] the parties have not cited, nor have we found, any binding authority recognizing a comparable exception for res judicata.[9] Rather, the doctrine of res

---

8. *See Restatement (Second) of Judgments* § 28(5) (1982 & Supp.2012) (referencing the "public interest" exception to collateral estoppel).

9. We see no injustice in this dichotomy because the reach of issue preclusion is broader than that of claim preclusion. Unlike claim preclusion, issue preclusion can affect the outcome of a different, unrelated claim and can also affect a party in a second action with an unrelated third party. *See Restatement (Second) of Judgments* § 27 (1982 & Supp.2012) ("When an issue of fact or law is actually litigated

judicata itself is a doctrine founded upon the objective of preserving and protecting the public interest. *See, e.g., Duckett,* 374 S.C. at 464, 649 S.E.2d at 81 ("The doctrine [of res judicata] flows from the principle that public interest requires an end to litigation and no one should be sued twice for the same cause of action.").

Previous opinions of this court have addressed circumstances in which it was inappropriate to apply the doctrine of res judicata. In *Mr. T v. Ms. T,* the plaintiff filed a paternity action naming his ex-wife as a defendant and alleging that she committed fraud in leading him to believe he was the biological father of her children. 378 S.C. 127, 130–32, 662 S.E.2d 413, 415–16 (Ct.App.2008). The plaintiff also sought relief from the parties' prior decree of divorce, which had incorporated the parties' settlement agreement and had found that two children were born of the marriage. *Id.* at 130–32, 662 S.E.2d at 414–16. The family court had found that the plaintiff's paternity action was barred by "res judicata/collateral estoppel." *Id.* at 131, 662 S.E.2d at 415. On appeal, the plaintiff argued that the family court erred in this regard. *Id.* at 132, 662 S.E.2d at 415–16. This court reversed the family court's dismissal of the case and remanded the case for further development of the record. *Id.* at 139, 662 S.E.2d at 419.

Also, in *Johns v. Johns,* this court held a consent order's finding that the parties had a common-law marriage should not be given res judicata effect because the marriage was bigamous and South Carolina's policy of not recognizing bigamous marriages had been expressed in a statute declaring them to be void. 309 S.C. 199, 201–03, 420 S.E.2d 856, 858–59 (Ct.App.1992). Likewise, in *Jennings v. Dargan,* this court held that an order approving a settlement regarding paternity and child support was void and thus did not have a preclusive

---

and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties, whether on the same or a different claim."); *Restatement (Second) of Judgments* § 29 (1982 & Supp.2012) ("A party precluded from relitigating an issue with an opposing party, in accordance with §§ 27 and 28, is also precluded from doing so with another person unless the fact that he lacked full and fair opportunity to litigate the issue in the first action or other circumstances justify affording him an opportunity to relitigate the issue.").

effect against the child in her action for support. 308 S.C. 317, 320–21, 417 S.E.2d 646, 647–48 (Ct.App.1992). The court so ruled because the record did not indicate the family court had complied with statutes requiring a finding that the settlement was in the best interest of the minor and requiring review and approval of the settlement. *Id.* The court acknowledged the policy respecting finality of judgments but stated that the policy expressed in the cited statutes (protecting minors) was the overriding concern. *Id.*

 We find these opinions to be consistent with the requirement that a judgment must be "valid" in order to preclude a second action concerning the same transaction, and this validity requirement is already built into the doctrine of res judicata. *See Basnight,* 346 S.C. at 248–49, 551 S.E.2d at 278 (citing *Griggs v. Griggs,* 214 S.C. 177, 184, 51 S.E.2d 622, 626 (1949)) ("Under the doctrine of res judicata, a final judgment on the merits rendered by a court of competent jurisdiction, *without fraud or collusion,* is conclusive as to the rights of the parties and their privies." (emphasis added)); *Restatement (Second) of Judgments* § 24(1) (1982 & Supp. 2012) (conditioning the extinguishment of the second claim on the validity and finality of the prior judgment); *Restatement (Second) of Judgments* § 26(1) cmt. j (1982 & Supp.2012) (discussing the defendant's fraud, misrepresentation, or mistake as a factor contributing to the prior judgment). In each of these cases, there existed a specific, compelling concern as to the validity of the prior judgment. No such concern has been presented in the present case.

## B. The *Sunnen* Decision

In concluding that the present action was not barred by res judicata, the circuit court relied primarily on the reasoning of *Commissioner of Internal Revenue v. Sunnen,* 333 U.S. 591, 68 S.Ct. 715, 92 L.Ed. 898 (1948). The circuit court stated:

Because the 'Council District Expense Fund' appears in each annual budget for Greenville County, the enactment of each budget creates separate legal claims. As the United States Supreme Court has explained in the context of federal income taxes levied on an annual basis, *'[e]ach year is the origin of a new liability and a separate cause of*

*action.' Commissioner of Internal Revenue v. Sunnen,* 333 U.S. 591, 598, 68 S.Ct. 715, 92 L.Ed. 898 (1948). The same reasoning applies here. The fact that Mr. Sloan might have, or even did, challenge the legality of an identical line item in a previous budget does not bar Plaintiffs from the causes of action brought in this case.

(emphasis added).

The circuit court's reliance on the tax-year analysis in *Sunnen* was misplaced; *Sunnen's* explanation of res judicata in the context of differing tax years is not binding outside of the tax context. *See United States v. Stauffer Chemical Co.,* 464 U.S. 165, 172 n. 5, 104 S.Ct. 575, 78 L.Ed.2d 388 (1984) (rejecting the general applicability of *Sunnen's* collateral estoppel analysis outside of the tax context); *see also Peugeot Motors of Am., Inc. v. E. Auto Distribs., Inc.,* 892 F.2d 355, 359 (4th Cir.1989) ("We do not believe that the mere fact that Peugeot's questioned policies continued after the 1981 litigation allows Eastern to make the same legal claim about the same policies that were litigated and on account of which relief was denied in prior litigation."). *Compare Grp. Health Inc. v. United States,* 662 F.Supp. 753, 764 (S.D.N.Y.1987) (holding the plaintiff's claim that a Medicare regulation was unconstitutional did not depend "on the specific cost year involved") *and Carroll Twp. Auth. v. Mun. Auth. of City of Monongahela,* 102 Pa.Cmwlth. 363, 518 A.2d 337, 341 (Ct.1986) (holding that a township authority's 1985 complaint against a city's municipal authority challenging the inclusion of legal fees as an operating expense in utility rates presented a claim that was identical to the claim in the township authority's 1983 complaint because it did not appear that the 1985 complaint challenged "the actual amount paid or to be paid by [the city] for legal services as being excessive" and the ultimate issue in both actions appeared to be "one and the same, to wit, whether any legal fees incurred by [the city] in defending its rate charges may be passed on to [the township authority] through their inclusion in operating expenses") *with M.C.G. v. Hillsborough Cnty. Sch. Bd.,* 927 So.2d 224, 227 (Fla.Dist.Ct. App.2006) ("A cause of action to establish *entitlement to services* under the IDEA *by its nature* pertains to a particular period of time and is *based on the factual circumstances at that time.*" (emphasis added)).

Like the claims challenging a regulation in *Group Health,* the claim in the present case does not depend on any specific budget year; the complaint states *"for several years* Defendants have authorized and operated a fund variously known as the Council District Expense Fund, Council Reserves, Discretionary Funds, or the Slush Fund." (emphasis added). The complaint further states "County Council's delegation of legislative power to an individual member, as described herein, is unconstitutional and illegal, as explained in a South Carolina Attorney General opinion dated November 13, 2003. . . ." The complaint's prayer seeks injunctive relief as well as an order "Declaring that the delegation of the discretionary spending authority is illegal, invalid, and unconstitutional[.]"

Further, as in *Carroll Township Authority,* the complaint in the present case does not challenge specific dollar amounts as excessive. Hence, no specific budget or monetary amount constituted the "res" in the 1996 action or the present action. Rather, the complaint challenges the practice underlying the Council Reserves account, i.e., the delegation of authority to individual council members. Moreover, unlike the relief sought in *M.C.G.,* i.e., the provision of educational services by a local school board, the relief sought in the present case does not depend on any one time period; rather, the complaint challenges the creation and continued use of the Council Reserves account as an illegal delegation of legislative authority.

In sum, *Sunnen* does not alter our application of South Carolina preclusion principles to the present action. Therefore, the circuit court erred in holding that the present action was not barred by res judicata.

## II. Attorney's Fees

The County asserts that the trial court abused its discretion in awarding attorney's fees to Respondents. We agree. In a case brought by a party who is contesting state action, a court may award attorney's fees to the prevailing party under certain circumstances. S.C.Code Ann. § 15–77–300 (Supp. 2011). Because the present action is barred by res judicata, Respondents do not qualify as prevailing parties. Therefore, we reverse the award of attorney's fees and costs.

## CONCLUSION

Accordingly, we reverse the orders granting summary judgment and attorney's fees and costs to Respondents.

REVERSED.[10]

PIEPER, J., and CURETON, A.J., concur.

---

10. Because this action is barred by res judicata, we decline to address the merits of the present action. *See, e.g., Duckett,* 374 S.C. at 464, 649 S.E.2d at 81 (holding that res judicata flows from the principle that public interest requires an end to litigation); *see also Futch v. McAllister Towing of Georgetown, Inc.,* 335 S.C. 598, 613, 518 S.E.2d 591, 598 (1999) (stating an appellate court need not address an issue when a decision on a prior issue is dispositive).